UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
ARAM J. PEHLIVANIAN, Individually and :
On Behalf of All Others Similarly Situated, :
                               :
             Plaintiff, :
                               :
         - against - :     **OPINION AND ORDER**
                               :         14 Civ. 9443 (ER)
CHINA GERUI ADVANCED MATERIALS :
GROUP, LTD., MINGWANG LU, EDWARD :
MENG, YI LU, HARRY EDELSON, J.P. HUANG, :
KWOK KEUNG WONG, YUNLONG WANG, :
and MAOTONG XU, :
                               :
            Defendants. :
---------------------------------------------------------------x

Ramos, D.J.:

        This case arises out of alleged violations of the Securities Exchange Act of 1934 (the

"Exchange Act") by China Gerui Advanced Materials Group, Ltd. ("China Gerui" or the

"Company") and eight of its current and former Directors and Officers ("Individual Defendants"

and collectively, "Defendants").  The Second Amended Complaint ("SAC") alleges that

Defendants made a number of material omissions relating to the Company's purchase of certain

land use rights and acquisition of an antique porcelain collection in violation of Sections 10(b)

and 20(a) of the Exchange Act and Securities and Exchange Commission ("SEC") Rule 10b-5.[1]

Lead plaintiff, Aram J. Pehlivanian ("Pehlivanian" or "Plaintiff"), brings suit on behalf of a class

of all those who purchased or otherwise acquired China Gerui securities between July 11, 2011

and November 24, 2015 (the "Class Period"), and sustained losses upon the revelation of alleged

corrective disclosures (the "Class").  Pending before this Court is China Gerui and Individual

---

[1] Plaintiff also brought a claim for fraudulent concealment, but withdrew the claim in his Opposition to Defendants'
Motion to Dismiss the SAC.  *See* Pl.'s Opp'n Mem. at 2 n.2.

Defendant Harry Edelson's ("Edelson") motion to dismiss the SAC pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  For the reasons set forth below, the motion to dismiss is GRANTED.

## I.   Background

### a.  Factual Background

#### i.  The Defendants

China Gerui is a steel processing company based in China and incorporated under the laws of the British Virgin Islands that produces high-precision, ultra-thin, cold-rolled steel products for sale internationally and domestically.  SAC ¶¶ 2, 16.

As of the date of this Order, the only Individual Defendant that has been served is Edelson.  *See* Docs. 9, 54 (extending the deadline to serve the Individual Defendants, excluding Edelson, to October 1, 2016).  Edelson has been a director of China Gerui since 2009 and previously served as Chief Executive Officer and Chairman of the Board of Directors of China Gerui's predecessor corporation.  SAC ¶ 20.  Edelson has received $10,000 a month from China Gerui since 2010 for his services promoting awareness of the Company within the investment community, participating in road shows and investor conferences, and providing the Company with office space and communications facilities.  *Id.*

The other seven Individual Defendants are:  (1) Mingwang Lu ("Lu"), Chairman of China Gerui's Board of Directors and Chief Executive Officer; (2) Edward Meng ("Meng"), China Gerui's Chief Financial Officer and previously its Director of Investor Relations; (3) Yi Lu ("Y. Lu"), China Gerui's Chief Operating Officer and a Director; (4) J.P. Huang ("Huang"), a China Gerui Director who serves on the Audit Committee, Compensation Committee, and Nominating and Corporate Governance Committee; (5) Kwok Keung Wong ("Wong"), a former China Gerui

Director who served on the Audit Committee, Compensation Committee, and Nominating and Corporate Governance Committee; (6) Yunlong Wang ("Wang"), a China Gerui Director who took Wong's place on the Audit Committee, Compensation Committee, and Nominating and Corporate Governance Committee; and (7) Maotong Xu ("Xu"), a China Gerui Director and the Chair of the Audit Committee, Compensation Committee, and Nominating and Corporate Governance Committee.  *Id.* ¶¶ 17–24.

### ii.  The Chinese Steel Market

In 2010, the Chinese steel industry was the largest in the world, accounting for approximately 45% of global steel output.  *Id.* ¶ 26.  Years of growth, however, lead to a "glut of over-capacity."  *Id.*  As a result, heavy losses in the steel industry were anticipated and did occur in late 2010.  *Id.*  In addition to the capacity issue, the Chinese steel industry was unable to negotiate favorable pricing on the raw materials required to make steel because of its heavy fragmentation.  *Id.*  In an attempt to bolster the steel industry, the Chinese government announced a five-year plan to reduce capacity, decrease pollution, and improve China's bargaining position.  *Id.* ¶ 27.

### iii.  Defendants' Allegedly Material Omissions

Plaintiff claims that China Gerui implemented strategies that cut against the government's five-year plan, *id.* ¶ 28, and that Defendants failed to disclose material information pertaining to two of those strategies:  (1) the purchase of land use rights to 25.94 acres of land located in China from an entity called Zhengzhou No. 2 Iron and Steel Company Limited ("Zhengzhou") for $42.6 million (the "Land Transaction"), *id.* ¶¶ 4–6, 29–34;[2]  and (2) the

---

[2] Plaintiff alleges that the Land Transaction involved the purchase of land use rights to 25.94 acres of land, although the Company's own annual reports consistently refer to 24.94 acres.  *Compare* SAC ¶¶ 4–5, 29–31, *with* Declaration

purchase of a collection of antique Chinese porcelain for $234 million (the "Porcelain Acquisition"), *id.* ¶¶ 7–11, 35–42. Each of these transactions is more fully described below.

**The Land Transaction.**  On July 11, 2011, China Gerui announced, in its 2010 annual report, that it had started the process of acquiring title to 25.94 acres of land use rights from Zhengzhou. *Id.* ¶ 29.  The Company's existing production facilities and warehouses were already located on a portion of that land, as the Company had been subleasing 6.69 acres. *Id.* The Company stated that it had prepaid, as of December 31, 2010, approximately $2.1 million to Zhengzhou, but that the final price was to be further determined "based on market-based valuation of the land value and calculation of associated value-added tax." *Id.* The stated purpose of the transaction was "operation risk mitigation." *Id.*

On May 7, 2012, in its 2011 annual report, the Company again stated that it was in the process of transferring title to the 25.94 acres of land use rights. *Id.* ¶ 30.  The Company also announced that it had increased its prepayment to approximately $12.7 million, noting that the final transfer price would need to be further determined and that the Company might need to make additional payments "depending on the conditions of transfer that [were] ultimately negotiated." *Id.* The Company reiterated that the purpose of the transaction was "operation risk mitigation." *Id.* The Company also noted that the Land Transaction would "protect the legal status of [the Company's] current operations and potential expansions." *Id.*

On April 30, 2013, in its 2012 annual report, the Company announced that on February 26, 2013, it had entered into an agreement with Zhengzhou, whereby the Company would acquire the land use rights to the 25.94 acres in exchange for $42.6 million. *Id.* ¶ 31.  The

---

of David M. Furbush in Support of Motion to Dismiss ("Furbush Decl.") (Doc. 51), Ex. 1 (2010 annual report) at 53, Ex. 2 (2013 annual report) at 9, 41.  The Court assumes for present purposes that 25.94 acres of land are at issue.

Company disclosed that the purchase price was determined based on a report prepared by an independent appraisal firm called Henan Minsheng Asset Appraisal Office.  *Id.*  The Company stated that the purpose of the transaction was "to ultimately reduce [the Company's] overall risk position by reducing [its] dependence on third parties for [its] land use rights," although the Company acknowledged that over-capacity was a risk to its business.  *Id.* ¶¶ 31, 34.  Plaintiff alleges that both the Board and the Board's Audit Committee approved the Land Transaction. *Id.* ¶ 31.

Plaintiff claims that the Company grossly overpaid for the land use rights[3] and that the Land Transaction did not make fiscal sense, given the over-capacity problem then existing in the steel industry.  *Id.* ¶¶ 29–30.  Plaintiff also contends that Defendants failed to disclose a number of facts regarding the Land Transaction, namely:  the "market-based valuation of the land value;" the "calculation of associated value-added tax;" the "conditions of transfer that [were] ultimately negotiated;" the meaning of "operation risk mitigation;" how the transfer of land use rights would "protect the legal status of [the Company's] current operations and potential expansions;" what economic benefit, if any, the transfer would produce for the Company's public shareholders; and the rationale for the Company to further expand its production capacity.  *Id.* ¶¶ 31–33.

Plaintiff also claims that he has learned from confidential sources certain facts regarding the Land Transaction that were not disclosed by Defendants, including that there is a dispute between Chinese government agencies over ownership of the land use rights, that title to the land

---

[3] Plaintiff alleges that at the time the Company entered into the Land Transaction, it had almost fifteen years remaining on its sublease of 6.69 acres from Zhengzhou.  SAC ¶ 6.  According to Plaintiff, the sum of the lease payments for the remaining fifteen years would have equaled only approximately 1% of the aggregate value of the Land Transaction.  *Id.*

use rights was never actually transferred to the Company, and that the independent appraisal firm alleged to have prepared the report relied upon by the Company does not exist. *Id.* ¶¶ 49–51.

***The Porcelain Acquisition.***   On September 4, 2014, the Company announced, during an earnings conference call, that it had purchased for $234 million a collection of antique Chinese porcelain appraised at $905 million. *Id.* ¶ 35.   Lu, the Company's CEO, explained that Company management and the Board of Directors decided to take advantage of the Company's rich cash position to make the alternative investment. *Id.*   Lu explained that the Company's intention was to sell all 206 pieces in the collection over time at a substantial return, and to use the profits from the sale to support the Company's steel operations while the steel industry "gains stronger fundamental balance." *Id.* ¶¶ 35–36.

Meng, the Company's CFO, provided more detail regarding the porcelain collection.   He noted that the porcelain came from a private entrepreneur who was under financial pressure from his personal business, that the collection was appraised and authenticated by "Class A certified China arts appraisers," and that the prices of the individual pieces in the collection compared favorably with those of similar pieces. *Id.* ¶ 40.   Both Lu and Meng acknowledged that the Porcelain Acquisition, paid for from the Company's existing cash accounts, would put short-term pressure on the Company's cash position. *Id.* ¶¶ 37–38, 40.   Both executives expressed optimism, however, regarding the potential rewards from the investment. *Id.* ¶¶ 37–38.

On the date the Porcelain Acquisition was announced, September 4, 2014, China Gerui's stock price declined approximately 20%, from $0.61 per share (pre-split)[4] on September 3, 2014, to $0.49 per share (pre-split). *Id.* ¶ 43.   Approximately three weeks later, on September 26,

---

[4] China Gerui's Board of Directors approved a one-for-ten reverse stock split, effective November 7, 2014, meant to raise the Company's share price above the NASDAQ's $1.00 per share listing requirement to avoid being delisted. SAC ¶ 45.   The Company's shares were later delisted on November 24, 2015. *Id.* ¶ 47.

2014, Lu sent a letter to shareholders discussing the Company's ongoing growth strategy, but the letter made no mention of the recent porcelain purchase. *Id.* ¶ 44.  On January 6, 2015, the Company issued a press release, in which it stated that the Company was "vigorously pursuing opportunities with established domestic and international auction houses to liquidate the antique collection in part or in its entirety." *Id.* ¶ 46.

According to Plaintiff, since the January 6, 2015 press release, the Company has not disclosed any information regarding the porcelain collection. *Id.* ¶ 48.  Indeed, Plaintiff claims that Defendants have failed to disclose a number of facts regarding the Porcelain Acquisition, namely:  when or from whom the porcelain was purchased; where the collection was being stored; whether the collection was insured; who appraised and authenticated the collection; what material actions were being taken to "vigorously pursu[e] opportunities" to liquidate the collection; and which "established domestic and international auction houses" were being used to liquidate the collection. *Id.* ¶¶ 42, 46, 58.

Plaintiff also claims that he has learned from confidential sources certain facts regarding the Porcelain Acquisition that were not disclosed by Defendants, including that the porcelain collection was being stored at a hotel in China, that the collection was not insured, and that the Company had attempted to obtain insurance for the collection but was denied coverage. *Id.* ¶¶ 55–56.

***Other Omissions.***  Aside from Defendants' alleged omissions related to the Land Transaction and the Porcelain Acquisition, Plaintiff claims that he has learned from confidential sources a number of other facts regarding the Company that were not disclosed by Defendants, namely that:  the Company will not be issuing any financial statements in the near future; the Company's most recent public auditor is no longer performing any auditing or accounting work

for the Company; the Company no longer maintains any active business operations; and Company management is no longer being paid.  *Id.* ¶¶ 52, 54, 59.

###### b.   Procedural Background

On November 26, 2014, Pehlivanian, individually and on behalf of purchasers and those that otherwise acquired China Gerui securities between January 11, 2012 and September 4, 2014, filed a Complaint against China Gerui and the Individual Defendants.  Doc. 1.  On December 5, 2014, Plaintiff filed an Amended Complaint.  Doc. 3.  Plaintiff's Amended Complaint focused on the events leading up to the Porcelain Acquisition, claiming that Defendants made false and misleading statements regarding China Gerui's growth strategy, fiscal strategy, and unrestricted cash holdings by failing to disclose the Company's intention to use a significant portion of its cash holdings to acquire the porcelain.  *Id.*

On December 23, 2015, this Court granted Defendants' motion to dismiss the Amended Complaint.  *Pehlivanian v. China Gerui Advanced Materials Grp., Ltd.*, No. 14 Civ. 9443 (ER), 2015 WL 9462115 (Dec. 23, 2015) ("*China Gerui I*").  The Court held that Plaintiff failed to plausibly allege that any of Defendants' statements regarding the Company's growth strategies, fiscal responsibilities, or cash reserves were false when made, *id.* at *8–9, or that they rendered any of Defendants' prior statements misleading, *id.* at *11–12.[5]  The Court also found that Plaintiff's allegations did not raise a strong inference that Defendants intended to deceive or mislead investors.  *Id.* at *14–16.  Acknowledging that it was possible for Plaintiff to plead

---

[5] The Court appreciated that the events surrounding the Porcelain Acquisition, if true, would lead any reasonable investor to suspect fraud, but explained that this suspicion must at base be supported by facts tending to establish that the Company's public statements regarding the purchase were false when made—which the Amended Complaint failed to do.  *China Gerui I*, 2015 WL 9462115, at *9 n.6.

additional facts to remedy the deficiencies identified by the Court, the Court granted Plaintiff leave to amend his Complaint a second time.  *Id.* at *17.

On January 22, 2016, Pehlivanian filed his SAC against China Gerui and the Individual Defendants.  Doc. 45.  Plaintiff filed the SAC individually and on behalf of purchasers and those that otherwise acquired China Gerui securities, this time between July 11, 2011 and November 24, 2015.  *Id.* ¶ 1.  As with the Amended Complaint, the SAC alleges that Defendants failed to disclose a number of facts regarding the Porcelain Acquisition.  Plaintiff also now alleges that Defendants failed to disclose information regarding the Land Transaction, as well as other facts pertaining to the business of the Company.  On February 22, 2016, Defendants China Gerui and Edelson moved to dismiss the SAC.  Doc. 48.

## II.    Legal Standard

### a.    Rule 12(b)(6) Motions to Dismiss:  General Legal Standard

When ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014).  The Court is not required to credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also id.* at 681 (citing *Twombly*, 550 U.S. at 551).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  More specifically, the plaintiff must allege sufficient facts to show "more than a sheer

possibility that a defendant has acted unlawfully." *Id.* If the plaintiff has not "nudged [her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570; *see Iqbal*, 556 U.S. at 680.

The question in a Rule 12 motion to dismiss "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995)). "[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) 'is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits,'" and without regard for the weight of the evidence that might be offered in support of Plaintiff's claims. *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (quoting *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006)).

### b.  Heightened Pleading Standard under Rule 9(b) and the PSLRA

Beyond the requirements of Rule 12(b)(6), a complaint alleging securities fraud must satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act of 1995 ("PSLRA") by stating the circumstances constituting fraud with particularity. *See, e.g.*, *ECA & Local 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 196 (2d Cir. 2009) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319–20 (2007)). Specifically, Rule 9(b) requires that a securities fraud claim based on misstatements must identify:  (1) the allegedly fraudulent statements, (2) the speaker, (3) where and when the statements were made, and (4) why the statements were fraudulent. *See, e.g.*, *Anschutz Corp. v. Merrill Lynch & Co., Inc.*, 690 F.3d 98, 108 (2d Cir. 2012) (citing *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004)). Put another

way, Rule 9(b) "requires that a plaintiff set forth the who, what, when, where and how of the alleged fraud."  *U.S. ex rel. Kester v. Novartis Pharm. Corp.*, 23 F. Supp. 3d 242, 252 (S.D.N.Y. 2014).

Like Rule 9(b), the PSLRA requires that securities fraud complaints "'specify' each misleading statement," set forth the reasons or factual basis for the plaintiff's belief that the statement is misleading, and "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 345 (2005) (quoting 15 U.S.C. §§ 78u-4(b)(1), (2)); *see also, e.g.*, *Slayton v. Am. Express, Co.*, 604 F.3d 758, 766 (2d Cir. 2010).

### c.   Confidential Sources

Notwithstanding a securities fraud plaintiff's obligation to plead with particularity, his complaint allegations may be based on information obtained from confidential sources.  *In re PXRE Grp., Ltd., Sec. Litig.*, 600 F. Supp. 2d 510, 526 (S.D.N.Y. 2009).  In order for a court to credit such information, however, the confidential sources must be "described in the complaint with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged."  *Emps.' Ret. Sys. of Gov't of the Virgin Islands v. Blanford*, 794 F.3d 297, 305 (2d Cir. 2015) (quoting *Novak v. Kasaks*, 216 F.3d 300, 314 (2d Cir. 2000)).

Defendants contend that the Court cannot credit SAC allegations that rely on the following sources:  (1) anonymous non-class-member Company investors; (2) an investigation report commissioned by an anonymous non-class-member investor and produced by Steve Vickers and Associates Limited (the "SVA Report"); (3) an employee of the Company's most recent public auditor, the independent registered public accounting firm, UHY Vocation HK

11

Limited ("UHY"); and (4) a Chinese law firm/title company retained by Plaintiff.  Defs.' Mem. at 12–14.  The Court considers each of these allegations in turn.

Plaintiff alleges that according to one or more non-class-member investors,[6] "there is a dispute between certain Chinese government agencies over the actual ownership of the land use rights, and therefore, title to the land use rights could not be transferred to the Company," SAC ¶ 49; the Company was denied insurance coverage for its porcelain collection, *id.* ¶ 56; the Company will not be issuing any financial statements in the near future, *id.* ¶ 52; and management is no longer being paid, *id.* ¶ 59.  Without more, however, the Court cannot determine whether someone in each investor's position "would be privy to the information alleged."  *In re EVCI Colls. Holding Corp. Sec. Litig.*, 469 F. Supp. 2d 88, 97 (S.D.N.Y. 2006).  Accordingly, the Court cannot credit these allegations and will not consider them in deciding the present motion.

Plaintiff also alleges that according to a non-class-member investor, the porcelain collection was being stored at a hotel in China.  SAC ¶ 55.  Unlike Plaintiff's other allegations attributed to non-class-member investors, Plaintiff explains how this particular investor came to learn the fact of the porcelain's whereabouts—namely, Plaintiff alleges that the investor visited the hotel and physically examined the collection.  *Id.*  The Court accordingly assumes as true the fact that the porcelain was stored at a hotel in China at some point in time.

Plaintiff cites a number of his claims to the SVA Report, which was allegedly prepared following "an investigation into the on-going business operations and finances of [the Company], as well as other [Company]-related individuals and entities."  *Id.* at 2.  "This vague

---

[6] It is unclear from the wording of the SAC how many non-class-member investors supplied information for Plaintiff's allegations.  *Cf. In re PXRE Grp., Ltd., Sec. Litig.*, 600 F. Supp. 2d at 526 (referring to confidential informants as CI # 1, CI # 2, CI # 3, and CI # 4).

description of the source provides no basis for the Court to evaluate its reliability." *City of Brockton Ret. Sys. v. Avon Prods., Inc.*, No. 11 Civ. 4665 (PGG), 2014 WL 4832321, at *23 (S.D.N.Y. Sept. 29, 2014). Therefore, the Court cannot credit Plaintiff's allegations that the Company "paid $42.6 million for the transfer of title to a land use right," but "the title to that property was never actually transferred," SAC ¶ 50; "an entity entitled 'Henan Minsheng Asset Appraisal Office' does not exist," *id.* ¶ 51; "the Company's steel production plant has experienced only irregular steel production operations during the June 2014 to Spring 2015 time period," *id.* ¶ 59; and "since the Spring of 2015, the Company's production activity has virtually been suspended" with "no indication from [the Company's] management or its Board as to when normal production activities would resume," *id.*[7]

Plaintiff alleges that according to a UHY employee, UHY is no longer performing any auditing or accounting work for the Company. *Id.* ¶ 54. Moreover, according to a Chinese law firm/title company, Zhengzhou—and not the Company—has owned the land use right since March 2006. *Id.* ¶ 50. The Court is satisfied that a UHY employee is likely to know whether the auditor was performing work for the Company, irrespective of the employee's name, title, or job responsibilities. In addition, the Court is satisfied that a title company likely knows the ownership status of the land use right, notwithstanding that Plaintiff does not provide additional information regarding the investigative efforts the company undertook to learn that fact. Accordingly, the Court considers these allegations to be true.[8]

---

[7] In his opposition brief, Plaintiff states that he has been given permission to identify his anonymous sources with more particularity and authorization to supply the Court with a copy of the SVA Report. Pl.'s Opp'n Mem. at 12 n.8.

[8] Plaintiff contends that he has uncovered more information from confidential sources since filing the SAC. *See* Pl.'s Opp'n Mem. at 16 n.9 (the Company will not be issuing any more financial statements because the CEO does not want to pay for an auditor to review the Company's financial reports), 16 n.10 (the Company is no longer in business), 19 n.11 (Edelson was more like a management executive than an outside Board member). The Court does

### d. Extrinsic Documents

"When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiffs relied on in bringing suit and that are either in the plaintiffs' possession or that the plaintiffs knew of when bringing suit, or matters of which judicial notice may be taken." *Silsby v. Icahn*, 17 F. Supp. 3d 348, 354 (S.D.N.Y. 2014) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)), *aff'd sub nom. Lucas v. Icahn*, No. 14 Civ. 1906, 2015 WL 3893617 (2d Cir. June 25, 2015) (summary order); *see also DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). To be incorporated into the complaint by reference, "the [c]omplaint must make a clear, definite and substantial reference to the documents." *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F. Supp. 2d 679, 691 (S.D.N.Y. 2011). The Court may also "take judicial notice of public disclosure documents that must be filed with the [SEC] and documents that both 'bear on the adequacy' of SEC disclosures and are 'public disclosure documents required by law.'" *Silsby*, 17 F. Supp. 3d at 354 (quoting *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773–74 (2d Cir. 1991)); *see also In re Bank of Am. AIG Disclosure Sec. Litig.*, 980 F. Supp. 2d 564, 570 (S.D.N.Y. 2013), *aff'd*, 566 F. App'x 93 (2d Cir. 2014) (summary order).

China Gerui and Edelson attach the Company's 2010 and 2013 annual reports and an article from China's official media outlet, Xinhua News Agency, to their motion to dismiss the SAC and reply brief in support thereof. *See* Declaration of David M. Furbush in Support of

---

not consider these new allegations in deciding Defendants' present motion to dismiss. *See Goplen v. 51job, Inc.*, 453 F. Supp. 2d 759, 764 n.4 (S.D.N.Y. 2006) ("[T]hese allegations are not properly before the Court. The complaint makes no mention of these claims and plaintiffs cannot amend their complaint through a legal memorandum.").

Motion to Dismiss ("Furbush Decl.") (Doc. 51), Exs. 1–2; Declaration of David M. Furbush in

Support of Defendants' Reply Memorandum of Law ("Furbush Reply Decl.") (Doc. 58), Ex. 1.

The SAC cites and relies on the 2010 annual report.  SAC ¶ 29.  Accordingly, the SAC

incorporates this document by reference and the Court will consider it in deciding the present

motion to dismiss.  *See San Leandro Emergency Med. Grp. Profit Sharing Plan v. Phillip Morris

Cos., Inc.*, 75 F.3d 801, 809 (2d Cir. 1996).

Regarding the documents not cited to or relied on in the SAC—the 2013 annual report

and the Xinhua News Agency article—the Court may "take judicial notice of public disclosure

documents that must be filed with the [SEC,] . . . documents that both 'bear on the adequacy' of

SEC disclosures and are 'public disclosure documents required by law,'" *Silsby*, 17 F. Supp. 3d

at 354 (quoting *Kramer*, 937 F.2d at 773–74), and of "press coverage establishing what

information existed in the public domain during periods relevant to the plaintiffs' claims," *In re

Bank of Am. AIG Disclosure Sec. Litig.*, 980 F. Supp. 2d at 570 (citing *Staehr v. Hartford Fin.

Servs. Grp., Inc.*, 547 F.3d 406, 425–26 (2d Cir. 2008)).  Plaintiff also does not object to the

Court's consideration of any of the attached documents.  Accordingly, this Court may take

judicial notice of the annual report and article.

## III.   Discussion

Defendants contend that this action must be dismissed in its entirety because Plaintiff

fails to even allege that any Defendant made a material misrepresentation or omitted to state a

fact necessary to render a prior statement not misleading.  Defs.' Mem. at 2.  According to

Defendants, Plaintiff has instead, for the second time, attempted to improperly disguise corporate

mismanagement allegations as securities fraud allegations.  *Id.* at 9.  Defendants also argue that

Plaintiff fails to adequately plead a strong inference of scienter, reliance, or loss causation, *id.* at 7, and that Plaintiff's claim related to the Land Transaction is time barred, *id.* at 18.

### a.  Section 10(b) Claims

Section 10(b) of the Exchange Act prohibits using or employing, "in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance," 15 U.S.C. § 78j(b), while SEC Rule 10b-5, promulgated thereunder, creates liability for a person who makes "any untrue statement of a material fact or . . . omit[s] to state a material fact . . . in connection with the purchase or sale of any security," *In re OSG Sec. Litig.*, 971 F. Supp. 2d 387, 397 (S.D.N.Y. 2013) (quoting 17 C.F.R. § 240.10b-5 (1951)).

To state a private civil claim under Section 10(b) and Rule 10b-5, a plaintiff must plead that:  (1) the defendant made a material misrepresentation or omission, (2) with scienter, *i.e.*, a wrongful state of mind, (3) in connection with the purchase or sale of a security, and (4) that the plaintiff relied on the misrepresentation or omission, thereby (5) causing economic loss.  *Dura*, 544 U.S. at 341–42; *see also, e.g.*, *Lattanzio v. Deloitte & Touche LLP*, 476 F.3d 147, 153 (2d Cir. 2007); *Kalnit v. Eichler*, 264 F.3d 131, 138 (2d Cir. 2001).  The Court finds that Plaintiff fails to adequately plead the existence of even the first element of a Section 10(b) claim.

### i.  Material Misstatements and Omissions

In order to survive a motion to dismiss, Plaintiff must establish that Defendants "made a statement that was '*misleading* as to a *material* fact."[9]  *Matrixx Initiatives, Inc. v. Siracusano*,

---

[9] In determining materiality, the question is whether "there is 'a substantial likelihood that the disclosure of the [omitted fact] would have been viewed by the *reasonable* investor as having *significantly* altered the total mix of information [ ] available.'"  *Monroe Cty. Emps.' Ret. Sys. v. YPF Sociedad Anonima*, 15 F. Supp. 3d 336, 349 (S.D.N.Y. 2014) (quoting *In re ProShares Tr. Sec. Litig.*, 728 F.3d 96, 102 (2d Cir. 2013)).  China Gerui and Edelson argue that many of the statements and omissions underlying Plaintiff's claims are immaterial.  Defs.' Mem. at 11–12.  Since the Court finds that Plaintiff has not adequately plead a misrepresentation or omission, however, the Court need not address the issue of materiality.

563 U.S. 27, 38 (2011) (quoting *Basic Inc. v. Levinson*, 485 U.S. 224, 238 (1988)); *see In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 571 (S.D.N.Y. 2014) ("With respect to misstatements, there are two components to this requirement:  the statement must be false, and the statement must be material."), *aff'd*, 604 F. App'x 62 (2d Cir. 2015).  "A violation of Section 10(b) and Rule 10b-5 premised on misstatements cannot occur unless an alleged material misstatement was false *at the time it was made*."  *In re Lululemon Sec. Litig.*, 14 F. Supp. 3d at 571.  Furthermore, the Second Circuit has repeatedly indicated that plaintiffs cannot simply assert that a statement is false—"they must demonstrate with specificity why and how that is so."  *Rombach*, 355 F.3d at 174.

With respect to material omissions, a defendant's silence is not misleading absent a duty to disclose.  *Basic*, 485 U.S. at 239 n.17.  "Disclosure of an item of information is not required . . . simply because it may be relevant or of interest to a reasonable investor."  *Resnik v. Swartz*, 303 F.3d 147, 154 (2d Cir. 2002).  Rather, "[a] duty to disclose arises whenever secret information renders prior public statements materially misleading."  *In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 268 (2d Cir. 1993).  The parties are not under a duty to disclose information that is equally available, widely reported, or "so basic that any investor could be expected to know it."  *Monroe Cty. Emps.' Ret. Sys. v. YPF Sociedad Anonima*, 15 F. Supp. 3d 336, 349 (S.D.N.Y. 2014).

In the SAC, Plaintiff only generally alleges that Defendants affirmatively made any materially false or misleading statements.  *See, e.g.*, SAC ¶¶ 25 ("The Individual Defendants are liable for both the false and misleading statements being issued by the Company, as well as the significant omissions of material facts that the Defendants had a duty to disclose . . . ."), 68 ("At all relevant times, the material misrepresentations and omissions particularized in this Complaint

directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and the other members of the Class.").  General allegations such as these do not satisfy a securities fraud plaintiff's obligation under Rule 9(b) and the PSLRA to specify each misleading statement at issue in the action.  *See Dura*, 544 U.S. at 345.

Plaintiff instead focuses his claims on what Defendants allegedly failed to say.  The SAC contains a litany of facts Defendants purportedly failed to disclose regarding the Land Transaction, the Porcelain Acquisition, and the Company itself.  *See supra* Section I.a.iii.  But Plaintiff nowhere explains in his pleading how these alleged omissions rendered any of Defendants' prior statements false or misleading.  For that reason, Plaintiff fails to adequately plead a Section 10(b) claim.

For example, Plaintiff recites a number of facts alluded to but never actually disclosed by Defendants about the Land Transaction, including the "market-based valuation of the land value," the "calculation of associated value-added tax," the "conditions of transfer that [were] ultimately negotiated," the meaning of "operation risk mitigation," and how the transfer of land use rights would "protect the legal status of [the Company's] current operations and potential expansions."  SAC ¶¶ 30–32; *see* Pl.'s Opp'n Mem. at 8.  Similarly, Plaintiff alleges that Defendants failed to explain the rationale for the Land Transaction or the economic benefit the purchase would produce for the Company's shareholders.  SAC ¶ 33.  While the Court appreciates Plaintiff's frustration with the opacity of Defendants' disclosures to date, Defendants are not required to disclose every detail and contour of a Company transaction "simply because it may be relevant or of interest to a reasonable investor."  *Resnik*, 303 F.3d at 154.[10]

---

[10] Plaintiff also alleges that Defendants failed to disclose that the Company's most recent public auditor is no longer performing auditing or accounting work for the Company, SAC ¶ 54, and argues—without providing any support— that the identity of a company's auditor is "always" a material fact, Pl.'s Opp'n Mem. at 7, 11.  Unless Plaintiff

Even the allegations Plaintiff makes for the first time in his brief fail to connect the dots between Defendants' omissions and some misleading statement.   For instance, the SAC alleged that the Company announced, in its 2012 annual report, that it "had entered into a contract to obtain title" to the 25.94 acres of land use rights owned by Zhengzhou.  SAC ¶ 31.  Plaintiff also claimed that a title company informed him that Zhengzhou continued to own the land use rights. *Id.* ¶ 50.  Plaintiff now argues that the latter fact renders the prior announcement misleading. Pl.'s Opp'n Mem. at 3, 7, 8–9.  There is no inconsistency between these two statements, however.  Moreover, the 2012 annual report itself disclosed that "additional funds may need to be paid in order to transfer the land use rights," thus curing any potential confusion about whether title transferred automatically upon signing the contract.  Affirmation of Shawn P. Thomas in Support of Defendants' Motion to Dismiss the Amended Complaint (Doc. 25), Ex. 3 at 10;[11] *see also* Furbush Decl., Ex. 2 (2013 annual report) at 41 (noting that the transfer "is still in process").

The SAC also alleged that the Company disclosed in its 2012 annual report that it "recently completed its production capacity expansion program."  SAC ¶ 13.  Plaintiff now argues that Defendants have never clarified the "inconsistency" between this statement and the fact that the Company was endeavoring to purchase more land use rights.  Pl.'s Opp'n Mem. at 7–8.  Plaintiff fails to identify how any investor could have been misled by the Company's statement regarding its capacity expansion program, however, especially considering the

---

points to some statement rendered false or misleading by Defendants' alleged omission, the fact that the Company no longer has an auditor does not adequately serve as the basis of a Section 10(b) claim.

[11] Although the 2012 annual report was not submitted in support of Defendants' motion to dismiss the SAC, the Court may take judicial notice of the report, as it is a public disclosure document that must be filed with the SEC. *Silsby*, 17 F. Supp. 3d at 354.

Company announced, in the same report, that it was planning to purchase the 25.94 acres of land

use rights.  SAC ¶ 31.  The Court does not doubt that a reasonable investor might be puzzled by

the Land Transaction, but the *sine qua non* of a Section 10(b) action is fraud.[12]

Plaintiff similarly fails to tie any of Defendants' omissions regarding the Porcelain

Acquisition to a materially misleading statement.  Plaintiff first argues that Defendants'

omissions regarding the porcelain rendered false the impression that the Company was

"employing a business strategy consistent with its status as a steel company, not a company that

solely invests in porcelain."  Pl.'s Opp'n Mem. at 7.  This Court has already rejected Plaintiff's

attempt to base Section 10(b) claims upon the Company's statements regarding its business

strategies leading up to the Porcelain Acquisition.  *China Gerui I*, 2015 WL 9462115, at *10–11

("[S]tatements about China Gerui's fiscal strategy are best considered non-actionable puffery.").

Plaintiff also argues that Defendants had a duty to disclose details regarding the

disposition of the porcelain, such as the actions being taken to liquidate the collection, because of

Lu's announcement on the September 4, 2014 earnings call that the Company intended to "sell

all 206 pieces over time."  Pl.'s Opp'n Mem. at 10–11.  Defendants had no such duty, however.

As with Plaintiff's allegations regarding the Land Transaction, Plaintiff does not identify how

Defendants' failure to disclose these details renders any of the Company's prior statements

misleading.

---

[12] Given that Plaintiff fails to properly allege the existence of any actionable omission of material fact, the Court need not decide whether Plaintiff's claims related to the Land Transaction are barred by the applicable statute of limitations, or whether Plaintiff has adequately plead reliance or loss causation.  The Court notes, however, that the Company's 2013 annual report explicitly stated that the transfer of title was still in progress, Furbush Decl., Ex. 2 at 9, 41, calling into question Plaintiff's contention that "[t]o this day, a reasonably diligent plaintiff still would not have discovered that the land use right has not transferred from Zhengzhou to [the Company]," Pl.'s Opp'n Mem. at 18.

It is apparent that Plaintiff suspects that, contrary to Defendants' disclosures, the porcelain is actually worth substantially less than reported. Rather than expressly make that allegation, however, Plaintiff seems to argue that there are a number of facts that Defendants *could* disclose that *could* support an inference that the porcelain is worth less, *e.g.*, from whom it was purchased, where it has been stored, whether it is insured, and who appraised it. *See* Pl.'s Opp'n Mem. at 9–10 ("If it were disclosed to the investing public that the Porcelain Collection was being stored in a secure location, it could arguably be worth $905 million; yet, if the Porcelain Collection were being stored in an unprotected hotel suite and could be physically examined by significant numbers of people, . . . it becomes less believable that the Porcelain Collection is even worth its acquisition cost of $234 million."). The Court does not disagree. But Plaintiff's sheer speculation falls far short of the heightened pleading requirements set by Rule 9(b) and the PSLRA.[13] Without any particularized allegations going to the falsity of Defendants' statements, the Court is once again compelled to dismiss Plaintiff's claims.

---

[13] Relying on *Rombach v. Chang*, 355 F.3d 164 (2d Cir. 2004), Plaintiff argues that the requirement to plead with particularity should be relaxed here, because the information Defendants have omitted regarding the porcelain is "solely and exclusively within Defendants' control." Pl.'s Opp'n Mem. at 11. *Rombach* does not compel such a result. First, in *Rombach*, as here, the plaintiffs failed to explain why the alleged statements were, in fact, fraudulent. 355 F.3d at 175. Notwithstanding any "relaxed" pleading requirement, the Second Circuit Court of Appeals therefore affirmed the district court's dismissal of plaintiffs' claim. *Id.* Second, the plaintiffs in *Rombach* provided far more specificity than Plaintiff does here. In *Rombach*, the plaintiffs alleged that the defendants intentionally fostered mistaken beliefs concerning material facts that were incorporated into several analysts' reports. *Id.* at 174–75. The Court held that the plaintiffs had sufficiently alleged that the defendants intentionally fostered the beliefs, because the complaint alleged that the analysts' reports were derived from internal budget information furnished to the respective analysts by the defendants. *Id.* at 175. The Court held that the plaintiffs were not required to specifically allege when and where the defendants conveyed the information to the analysts, since that information was likely to be exclusively within the control of the defendants and the analysts. *Id.* at 175 n.10. Here, on the basis of what essentially amounts to a hunch, Plaintiff is asking this Court to bypass the requirements of Rule 9(b) and the PSLRA that Plaintiff specify not only which of Defendants' statements are false or misleading, but also the factual bases for believing them to be so. Plaintiff is not entitled such a wide-ranging pass.

### ii. Scienter

Given that Plaintiff fails to adequately plead the existence of a materially misleading statement or omission, Plaintiff's allegation that Defendants intentionally or recklessly defrauded Plaintiff by making such a statement or omission necessarily fails.  Even if one of Defendants' alleged omissions did render a prior statement misleading, however, Plaintiff still fails to adequately plead scienter.

To satisfy the PSLRA's pleading requirements for scienter, a plaintiff must allege facts with particularity that would give rise "to a *strong* inference that the defendant acted with the required state of mind."  *ECA*, 553 F.3d at 198 (quoting 15 U.S.C. § 78u-4(b)(2)(A)).  As Supreme Court precedent dictates, a "strong inference" that a defendant acted with a certain intent is one that is "more than merely plausible or reasonable—it must be cogent and *at least as compelling as* any opposing inference of nonfraudulent intent."  *Tellabs*, 551 U.S. at 314 (emphasis added).  This inquiry goes beyond the ordinary Rule 9(b) framework and requires courts to consider "not only inferences urged by the plaintiff . . . but also competing inferences rationally drawn from the facts alleged."  *Id.*  "According to the Supreme Court, the critical inquiry is:  '[w]hen the allegations are accepted as true and taken collectively, would a reasonable person deem the inference of scienter at least as strong as any opposing inference?'  If so, then scienter has been adequately pleaded.  If not, the case may be dismissed."  *Medis Inv'r Grp. v. Medis Techs., Ltd.*, 586 F. Supp. 2d 136, 141 (S.D.N.Y. 2008) (quoting *Tellabs*, 551 U.S. at 326).

A plaintiff may establish scienter by alleging facts that either (1) show that the defendant had both the "motive and opportunity" to commit the alleged fraud, or (2) constitute "strong circumstantial evidence of conscious misbehavior or recklessness."  *ECA*, 553 F.3d at 198; *see*

*also Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290–91 (2d Cir. 2006).  Here, Plaintiff relies

solely on "circumstantial evidence of conscious misbehavior or recklessness" to establish

scienter.  Pl.'s Opp'n Mem. at 13–14.  "Where the plaintiff pleads scienter by conscious

misbehavior or recklessness rather than motive, 'the strength of the circumstantial allegations

must be correspondingly greater.'"  *Medis Inv'r Grp.*, 586 F. Supp. 2d at 141–42 (quoting *Kalnit*,

264 F.3d at 142); *see also In re Bayou Hedge Fund Litig.*, 534 F. Supp. 2d 405, 415 (S.D.N.Y.

2007) ("[T]he strength of the recklessness allegations must be greater than that of allegations of

garden-variety fraud, *and* the inference of recklessness must be at least as compelling as any

opposing inferences.").

The SAC allegations as to Defendants' knowledge are entirely conclusory.  Plaintiff

alleges that because of their "positions and access to material non-public information," the

Individual Defendants "knew that . . . the limited representations that were being made were

materially false and/or misleading."  SAC ¶ 25; *see also id.* at ¶ 71 ("[T]he Individual

Defendants knew that the public documents and statements issued or disseminated in the name of

the Company were materially false and/or misleading . . . .").  Plaintiff thus fails to plead scienter

with particularity, as required by Rule 9(b) and the PSLRA.[14]

Plaintiff is also incorrect that "there is not a 'cogent' and/or 'compelling' inference in

favor of Defendants' innocence" under the facts as alleged.  Pl.'s Opp'n Mem. at 14.  The SAC

allegations suggest that the Company thought it wise to invest in assets not subject to the same

---

[14] In his brief, Plaintiff asks this Court to draw a number of inferences from the facts alleged, including that "the Land Transaction was simply created in order to allow the Individual Defendants to steal $42.6 million from [the Company]," that "Zhengzhou failed to transfer title to [the Company], and simply kept both the $42.6 million and the land use right," and that the Company spent $234 million on "worthless porcelain."  Pl.'s Opp'n Mem. at 14. The first inference is not properly before the Court, as it is raised for the first time in Plaintiff's brief.  *See Goplen*, 453 F. Supp. 2d at 764 n.4.  And neither of the other two inferences goes to Defendants' knowledge of any materially misleading statement.

over-capacity problem as the Chinese steel industry—namely, land and antique porcelain.  *See*

Defs.' Mem. at 1.  As this Court found in *China Gerui I*, "Plaintiff has made no particularized

allegations to suggest that China Gerui did not hold such a belief.  And as unorthodox as such an

investment may be, this nonfraudulent justification is at least as compelling as the inference of

fraudulent intent Plaintiff would have the Court draw."  2015 WL 9462115, at *15.

### b.   Section 20(a) Claims

Plaintiff also brings claims against the Individual Defendants under Section 20(a) of the

Exchange Act, which imposes liability on individuals who control any person or entity that

violates Section 10.  *See* SAC ¶¶ 88–90; *see also* 15 U.S.C. § 78t(a).  "To assert a *prima facie*

case under Section 20(a), a plaintiff 'must show a primary violation by the controlled person and

control of the primary violator by the targeted defendant, and show that the controlling person

was in some meaningful sense a culpable participant in the fraud perpetrated by the controlled

person.'"  *Bd. of Trs. of City of Ft. Lauderdale Gen. Emps.' Ret. Sys. v. Mechel OAO*, 811 F.

Supp. 2d 853, 882 (S.D.N.Y. 2011) (quoting *S.E.C. v. First Jersey Sec., Inc*., 101 F.3d 1450,

1472 (2d Cir. 1996)), *aff'd sub nom. Frederick v. Mechel OAO*, 475 F. App'x 353 (2d Cir. 2012)

(summary order).  The control person liability claims under Section 20(a) must be dismissed

because Plaintiff fails to allege a primary violation under Section 10(b).  *See Rombach*, 355 F.3d

at 178 ("Because we have already determined that the district court properly dismissed the

primary securities claims against the individual defendants, these secondary claims must also be

dismissed."); *see also Mechel*, 811 F. Supp. 2d at 859 n.4, 882 (dismissing Section 20(a) claims

against individual defendants who resided in Russia and had therefore not been served with the

complaint nor joined the company's motion to dismiss).

### c.  The Non-Moving Individual Defendants

This Court has the power to dismiss a complaint against the non-moving Individual Defendants, so long as it is exercised cautiously and on notice.  *See Wachtler v. Cty. of Herkimer*, 35 F.3d 77, 82 (2d Cir. 1994) (affirming the district court's dismissal of a claim against a defendant who neither filed an appearance nor moved for dismissal since plaintiff was on notice from motion of other defendants and had an opportunity to be heard); *see also Alki Partners, L.P. v. Vatas Holding GmbH*, 769 F. Supp. 2d 478, 499 (S.D.N.Y. 2011) (dismissing claims under Sections 10(b) and 20(a) against an individual defendant who did not appear in the case or join in the other defendants' motions because the plaintiffs' claims against him failed for the same reasons they failed against the other defendants), *aff'd sub nom. Alki Partners, L.P. v. Windhorst*, 472 F. App'x 7 (2d Cir. 2012) (summary order).  Although only China Gerui and Edelson have been served, *see* Doc. 52, their motion put Plaintiff on notice of the grounds for dismissal and Plaintiff was afforded an opportunity to respond.   Plaintiff has not established the existence of material misstatements or omissions or scienter.  *See supra* Section III.a.i–ii.  These deficiencies are fatal to Plaintiff's claims against the moving and non-moving Individual Defendants alike.  Therefore, Plaintiff's claims against the non-moving Individual Defendants are dismissed.

## IV.   Leave to Amend

China Gerui and Edelson request that this Court dismiss Plaintiff's action with prejudice.  Defs.' Mem. at 4, 22; Defs.' Reply Mem. at 1, 10.  Plaintiff conversely requests that the Court permit him leave to amend his Complaint a third time, so that he can supplement his pleading with new information discovered since filing the SAC.  Pl.'s Opp'n Mem. at 23–24.

Rule 15 of the Federal Rules of Civil Procedure instructs courts to "freely give leave" to replead "when justice so requires."  Fed. R. Civ. P. 15(a)(2); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962).  The "usual practice" in this Circuit upon granting a motion to dismiss is to permit amendment of the complaint.  *Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*, 33 F. Supp. 3d 401, 446–47 (S.D.N.Y. 2014) (citing *Ronzani v. Sanofi S.A.*, 899 F.2d 195, 198 (2d Cir. 1990)).  "Where the possibility exists that the defect can be cured, leave to amend at least once should normally be granted unless doing so would prejudice the defendant."  *Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, 26 F. Supp. 2d 593, 605 (S.D.N.Y. 1998) (citing *Oliver Schools, Inc. v. Foley*, 930 F.2d 248, 253 (2d Cir. 1991)); *see also ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007) (noting that "courts typically grant plaintiffs at least one opportunity to plead fraud with greater specificity when they dismiss under Rule 9(b)" but denying leave to amend where the plaintiff was already given that opportunity); *Luce v. Edelstein*, 802 F.2d 49, 56 (2d Cir. 1986) ("Complaints dismissed under Rule 9(b) are almost always dismissed with leave to amend.").

Because it is possible that Plaintiff can plead additional facts to remedy the deficiencies identified in this opinion without prejudice to Defendants, Plaintiff is granted leave to amend his Complaint a third time.  *See Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 189–90 (2d Cir. 2015) (finding the "district court exceeded the bounds of its discretion in denying Plaintiffs leave to amend their complaint" because an amended complaint "may cure the remaining defects" identified by the court).  Plaintiff will not be given unlimited bites at the apple, however.  This is the Court's second opinion dismissing Plaintiff's claims for failing to plead with the particularity required by Rule 9(b) and the PSLRA.  Plaintiff is thus on notice of the deficiencies in his pleading.  *See Dietrich v. Bauer*, 76 F. Supp. 2d 312, 351 (S.D.N.Y. 1999)

("[W]here a plaintiff is on notice of deficiencies in an initial pleading and has had the opportunity to cure them by a first amendment, 'dismissal with prejudice is proper when a complaint previously has been amended.'").

## V.    Conclusion

For the reasons set forth above, China Gerui and Edelson's motion to dismiss the SAC is GRANTED without prejudice.  Plaintiff's Third Amended Complaint shall be filed, if at all, on or before June 16, 2016.  The Clerk of the Court is respectfully directed to terminate the motion, Doc. 48.[15]

It is SO ORDERED.

Dated:    May 16, 2016
          New York, New York

Edgardo Ramos, U.S.D.J.

---

[15] The PSLRA requires the Court to "include in the record specific findings regarding compliance by each party and each attorney representing any party with each requirement of Rule 11(b) of the Federal Rules of Civil Procedure as to any complaint, responsive pleading, or dispositive motion."  15 U.S.C. § 78u-4(c)(1).  Neither the claims nor defenses were harassing or frivolous.  All factual contentions had evidentiary support or were reasonably based on belief or a lack of information.  Furthermore, Defendants did not affirmatively allege any improper conduct or move for sanctions.  In accordance with the PSLRA, the Court finds that the parties and counsel in this matter have complied with Rule 11(b).