G7DJPEHC                         Conference

 1  UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
 2  ------------------------------x

 3  ARAM J. PEHLIVANIAN, individually
    and on behalf of all others
 4  similarly situated,

 5              Plaintiffs,

 6        v.                                14 Civ. 9443 ER

 7  CHINA GERUI ADVANCED MATERIALS
    GROUP, Ltd., et al.,
 8
                Defendants.
 9
    ------------------------------x
10
                                        July 13, 2016
11                                      1:30 p.m.

12

13  Before:

14                   HON. EDGARDO RAMOS,

15                                        District Judge

16

17                      APPEARANCES

18

19

    LAW OFFICES OF CURTIS V. TRINKO, LLP
20        Attorneys for plaintiffs
    BY:  CURTIS VICTOR TRINKO, Esq.
21             Of counsel

22  PILLSBURY WINTHROP SHAW PITTMAN, LLP
          Attorneys for defendants
23  BY:  DAVID M. FURBUSH, Esq.
         JOSHUA ISAAC SCHLENGER, Esq.
24             Of counsel

25

                 SOUTHERN DISTRICT REPORTERS, P.C.
                      (212) 805-0300

G7DJPEHC                        Conference

1              (In open court)

2              (Case called)

3              THE COURT:  Good morning, everyone.  Please be seated.

4         This matter is on for premotion conference.  We have

5    been down this road before.  So, Mr. Trinko, let me ask you

6    what is different?

7              MR. TRINKO:  If I could bring up an issue of standing

8    first, your Honor?

9              THE COURT:  Okay.

10             MR. TRINKO:  We have been informed that defendant Mr.

11   Edelson had originally retained Mr. Furbush and Pillsbury when

12   this case started, and he did on behalf of himself and he was

13   still a director at that time of China Gerui or CHOP, so he

14   also did on behalf of them.  Mr. Edelson resigned as a director

15   of CHOP in March of this year.

16             So with regard to the letter, the premotion letter

17   that was written, Pillsbury is appearing here on behalf of

18   CHOP.  Does it have a written retention agreement with CHOP?  I

19   mean they're purporting to represent CHOP here.

20             THE COURT:  The standing issue relates to the standing

21   of Pillsbury and its purported representation of Mr. Edelson?

22             MR. TRINKO:  Not Mr. Edelson.  They are still

23   representing him, but as to the corporate defendant, as to

24   China Gerui Advanced Materials, Ltd.

25             MR. FURBUSH:  Yes, your Honor, we represent the

1    corporation as well as Mr. Edelson.

2            MR. TRINKO:  I am asking if they have a signed

3    retention agreement and who they speak with at China Gerui.

4    This has been a hide-and-seek across the globe with regard to

5    the individual defendants that reside in China.  They're in

6    China, they're in Beijing, they're in Hong Kong, Macau, here in

7    U.S., they're in Australia.  It has been a very frustrating.

8            I am asking them do they represent them officially,

9    and who do they talk to on behalf of China Gerui, and who

10   authorized them to come to this conference on behalf of China

11   Gerui, and who is paying them on behalf of China Gerui because

12   if Mr. Edelson is still the purported benefactor of this

13   situation, we want to know that because there is no standing

14   then for Pillsbury to be making a motion on behalf of China

15   Gerui.

16           THE COURT:  I have any number of several hundred

17   cases, and I don't know that in any one of them I require

18   counsel to provide evidence of their authority to represent a

19   party, but I will let Mr. Furbush answer if he can.

20           MR. FURBUSH:  Yes, we have been engaged by both the

21   corporation and Mr. Edelson to represent them in this case.

22           THE COURT:  Okay.  I don't know that you're entitled

23   to any discovery at this point beyond that.  Again this is a

24   unique request, in my experience.  I don't know that there has

25   been any allegation of wrongdoing or fraud upon the court.  I

G7DJPEHC                         Conference

1  don't know that I necessarily --

2              MR. TRINKO:  I am not making that kind of assertion.

3              It has been very frustrating in terms of service of

4  process and trying to get the individual Chinese-based

5  defendants to participate.

6              THE COURT:  I understand that.  That doesn't mean that

7  I should require necessarily Pillsbury to provide discovery at

8  this point regarding its representation.

9              MR. TRINKO:  We are researching a potential new motion

10 that we may bring with regard to service of process on Mr.

11 Mingwang Lu and Mr. Edward Meng, who we will have hopefully a

12 letter to your Honor within the next two weeks.

13             THE COURT:  When that is teed-up, I look forward to

14 receiving that letter.

15             MR. TRINKO:  Okay.

16             THE COURT:  With that, what is new?

17             MR. TRINKO:  Well, we have extensively researched an

18 investigation for this third amended complaint.  We have talked

19 to dozens of people who have been helping us, giving

20 information and stuff like that, and it contains a lot more

21 detail of the wrongdoing going back to 2009 when Mr. Edelson

22 went to China with a SPAC.  He had $42 million he raised and he

23 went and bought the steel company.

24             THE COURT:  He went to China with what?

25             MR. TRINKO:  It is called SPAC, a special company that

G7DJPEHC                    Conference

1    is formed in an IPO, and you take the money and you go

2    someplace and you buy companies.  That is what he did.  He had

3    $42 million, and he went to China and he bought the precursor

4    of CHOP or China Gerui.

5              He enlisted the aid then of the other defendants and

6    set it up.  That is important because they keep talking, Mr.

7    Edelson, almost like an outside independent director.  He was

8    the Machiavellian figure that set up this entire process, and

9    we have talked to dozens of people that he personally got to

10   invest in CHOP stock.  He was being paid $10,000.00 a month to

11   promote the company in road shows and wherever he could help

12   promote it.

13             So his involvement was much more than just a director,

14   and I think that is an important point and we tried to make

15   that point very clear.  That is important because of the

16   defenses that have been raised by Mr. Furbush and Pillsbury.

17   We believe that is clarified and really made clear now in the

18   third amended complaint.

19             Also Mr. Furbush characterizes this as corporate

20   mismanagement.  This is outright fraud and theft.  If these

21   people resided in the United States, they would be in jail now,

22   not, you know, subject to monitoring, penalties being sought by

23   shareholders.  This would be -- and we really do --

24             THE COURT:  They would be in jail, but would they be

25   in jail for securities fraud?

G7DJPEHC                          Conference

1        MR. TRINKO:  Yes.

2        THE COURT:  Why is that?

3        MR. TRINKO:  Securities fraud and theft because they

4    stole $300 million from this company that is unaccounted for.

5        The plant today is locked up.  There is no production

6    going on.  We don't know where the people are because they

7    float around all over China.  They're not running this company

8    and trying to do something.  We don't know where the porcelain

9    collection -- you remember the porcelain collection?

10        THE COURT:  I remember from before, yes.

11        MR. TRINKO:  $234 million was pulled out of the

12    company, and they chose that because they only had 236, and so

13    they took, they left a couple million there and took the rest.

14    Supposedly, it was worth 905 million, but there was never any

15    kind of certified appraisal, no certificate of authenticity.

16    It was never insured, it was never put into safekeeping.

17        Today we don't know where it is.  There was supposed

18    to be a liquidation program through a Christie's or Sotheby's

19    or whatever.  We don't know if there ever was a valuable

20    collection.  It might have been from a dime store because they

21    allowed -- we had pictures of a shareholder who went to a suite

22    in a hotel where it was being kept, and he was given a piece of

23    porcelain.  There were supposedly 206 pieces, worth a million

24    dollars apiece.  He was just saying here and take it and look

25    at it, whatever.

G7DJPEHC                    Conference

1          That would never happen if it is dime store porcelain,

2     okay?  If it is worth $1.98, that is fine.  It was kept in a

3     suite in a hotel with no security at all except for a key to

4     the door to get in.  So if it is worth $905 million, you would

5     expect that there would be different requirements for the

6     safekeeping of that.

7          Now with regard to the land transaction, this is about

8     a 25-acre parcel, and in China you don't get a fee simple; you

9     have land use rights.  The Peoples Republic of China owns all

10    the actual property, and then you have this called land use

11    rights.  The facility for making steel is about six and a half

12    acres of that, but they were going to buy the whole thing.

13         The company was an iron and steel company that owned

14    the whole thing, and they gave $43 million, gave it to them.

15    However, they never got a title to the land, and they

16    represented in their SEC filings that they had acquired the

17    property.  They said they had acquired.

18         We had a Chinese law firm title company that gave us a

19    report in May that says it never changed hands.  China Gerui

20    and/or Henan Green, its subsidiary, never received any

21    consideration.  Where is that $43 million?  I don't know.  We

22    don't know because on the SAIC, which is the equivalent of the

23    SEC in China, those reports are being filed timely by them, and

24    there is no indication on those reports where the 43 million

25    went.  So we know it went to Mr. Lu and went someplace, but it

G7DJPEHC                        Conference

1    didn't go to Zhengzhou Iron & Steel Company.

2              Today the Henan Green and China Gerui are still making

3    their reports timely to the SAIC in China.  However, they've

4    never even filed their last reports for 2014 as far as

5    quarterly reports or the 10-K, the equivalent of the 10-K for a

6    foreign company.

7              THE COURT:  They are or not timely filing?

8              MR. TRINKO:  Not timely filing at all.  They were then

9    removed from NASDAQ.  They trade over-the-counter now, pink

10   sheets type-thing.

11             Still when you trade, you still have an obligation to

12   file SEC reports.  They haven't filed anything in a year and a

13   half.  So there is no up-to-date information as to what is

14   going on with this company other than the fact that the U.S.

15   investors were totally defrauded.  All the money is gone.  The

16   facility is locked up.  They don't have any real employees

17   other than a few guards that are there.  People are just

18   supposed to just take it, I guess.

19             One other thing is neither DOJ, the U.S. Attorney's

20   Office, the SEC, the Obama Administration, Congress, nobody has

21   seen fit to try to protect U.S. investors in China-based

22   companies.  This Court is the last resort for these investors.

23   There is no place else for them to go.

24             So because it wasn't Chinese-based investors, China

25   doesn't care about it, either.  If you do this in China, you

G7DJPEHC                    Conference

1    are shot.  That is the penalty.  In China if you steal from

2    Americans, you get a medal, it is great.

3             In terms of we need to push this case forward instead

4    of going through another motion to dismiss and get something

5    moving on this and try to get compensation for our investors.

6             THE COURT:  Okay.  Mr. Furbush.

7             MR. FURBUSH:  Thank you, your Honor.

8             So the court is I think fairly familiar with this case

9    now having dismissed the previous two complaints.  In the last

10   order which was extensive, it was 29-pages long, the court

11   thoroughly examined all of the allegations that Mr. Trinko is

12   repeating here essentially.  The court has heard and considered

13   his theories about the porcelain acquisition.  The court has

14   heard and considered his theories about the land acquisition

15   and found that they did not state a claim under the United

16   States federal securities laws.

17            The court said he is not going to get unlimited bites

18   at the apple, and I took that to be a warning that this is the

19   last time.  I think Mr. Trinko has actually done me a favor by

20   affirmatively alleging in his preamble to his latest complaint

21   that he has now investigated as thoroughly as could possibly be

22   done, and I think his words are, "has conducted a comprehensive

23   investigation regarding CHOP that involved everything that one

24   could discover without subpoena power generated by any

25   individual or entity concerning the company."

G7DJPEHC                    Conference

1        So I believe that we are now teed-up for the last and

2    what I hope will be final round of a motion to dismiss.  There

3    is nothing new in the complaint.  There is a lot of obfuscation

4    and confusion that has been typical of the prior complaints,

5    but when you look at the substantive allegations, there is

6    nothing new.  I think this is time to finally dismiss the case.

7        THE COURT:  Well, certainly there is at least a

8    colorable basis for the motion, so I am going to let you go

9    ahead and file.  How much time do you want?

10        MR. FURBUSH:  Say, three weeks?

11        THE COURT:  Okay.  Mr. Trinko, to respond?

12        MR. TRINKO:  We're going to need -- normally we have

13    like 60 days.  We usually do 60, 60, 30 things.

14        THE COURT:  What about 30 days?

15        Do you want 60 days?

16        MR. TRINKO:  I would.

17        THE COURT:  So two months, three weeks, two months and

18    then to reply?

19        MR. FURBUSH:  Two weeks.

20        THE COURT:  Okay.  Let's get those dates.  Ms. Rivera

21    will give it to us.

22        THE CLERK:  The motion is due August 3, 2016.  The

23    opposition is due October 3, 2016.  The reply is due October

24    17, 2016.

25        THE COURT:  We have all those dates?

G7DJPEHC                           Conference

1              MR. FURBUSH:  Yes.

2              MR. TRINKO:  Yes.

3              THE COURT:  Is there anything else, Mr. Trinko?

4              MR. TRINKO:  As I said, I will give the court my

5    letter in two weeks.

6              THE COURT:  Very well.

7              Mr. Furbush, do you have anything else?

8              MR. FURBUSH:  I have nothing else, your Honor.

9              THE COURT:  In that event, we are adjourned.

10             (Court adjourned)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25