UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
ARAM J. PEHLIVANIAN, Individually and ：
On Behalf of All Others Similarly Situated, ：
                                                            ：
                              Plaintiff, ：
                                                            ：
              - against - ：         **OPINION AND ORDER**
                                                            ：
CHINA GERUI ADVANCED MATERIALS ：         14 Civ. 9443 (ER)
GROUP, LTD., MINGWANG LU, EDWARD ：
MENG, YI LU, HARRY EDELSON, J.P. HUANG, ：
KWOK KEUNG WONG, YUNLONG WANG, ：
and MAOTONG XU, ：
                                                            ：
                              Defendants. ：
----------------------------------------------------------------x

Ramos, D.J.:

　　This case arises out of alleged violations of the Securities Act of 1933 (the "Securities

Act") and the Securities Exchange Act of 1934 (the "Exchange Act") by China Gerui Advanced

Materials Group, Ltd. ("China Gerui" or the "Company") and eight of its current and former

Directors and Officers ("Individual Defendants" and collectively, "Defendants").  By way of his

Third Amended Complaint ("TAC"), lead plaintiff, Aram J. Pehlivanian ("Pehlivanian" or

"Plaintiff"), brings suit on behalf of a class of all those who purchased or otherwise acquired

China Gerui securities between March 17, 2009 and June 16, 2016 (the "Class Period"), and

sustained losses upon the revelation of alleged corrective disclosures (the "Class").  Pending

before this Court is China Gerui and Individual Defendant Harry Edelson's ("Edelson") motion

to dismiss the TAC with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure.  For the reasons set forth below, the motion is GRANTED.

## I.  Background

### a.  Factual Background

#### i.  The Defendants

China Gerui is a steel processing company based in China and incorporated under the laws of the British Virgin Islands that produces high-precision, ultra-thin, cold-rolled steel products for sale internationally and domestically.  TAC ¶¶ 2, 8.

As of the date of this Order, the only Individual Defendant that has been served is Edelson.  *See* Docs. 9, 54, 66 (extending the deadline to serve the Individual Defendants, excluding Edelson, to December 1, 2016).[1]  Edelson was a director of China Gerui from 2009 until March 2016, when he resigned.  TAC ¶¶ 12, 46 & n.5.  He previously served as Chief Executive Officer and Chairman of the Board of Directors of China Gerui's predecessor corporation.  *Id.* ¶ 12.  Edelson has received $10,000 a month from China Gerui since 2010 for his services promoting awareness of the Company within the investment community, participating in road shows and investor conferences, and providing the Company with office space and communications facilities.  *Id.*

The other seven Individual Defendants are:  (1) Mingwang Lu ("Lu"), Chairman of China Gerui's Board of Directors and Chief Executive Officer; (2) Edward Meng ("Meng"), China Gerui's Chief Financial Officer and previously its Director of Investor Relations; (3) Yi Lu ("Y. Lu"), China Gerui's Chief Operating Officer and a Director; (4) J.P. Huang ("Huang"), a China Gerui Director who serves on the Audit Committee, Compensation Committee, and Nominating and Corporate Governance Committee; (5) Kwok Keung Wong ("Wong"), a former China Gerui

---

[1] On July 27, 2016, Plaintiff requested leave to file a motion for alternative service of process under Federal Rule of Civil Procedure 4(f)(3).  Doc. 68.  On August 5, 2016, the Court entered an Order deferring consideration of Plaintiff's request until after the Court rules on Defendants' pending motion to dismiss.  Doc. 74.

Director who served on the Audit Committee, Compensation Committee, and Nominating and Corporate Governance Committee; (6) Yunlong Wang ("Wang"), a China Gerui Director who took Wong's place on the Audit Committee, Compensation Committee, and Nominating and Corporate Governance Committee; and (7) Maotong Xu ("Xu"), a China Gerui Director and the Chair of the Audit Committee, Compensation Committee, and Nominating and Corporate Governance Committee. *Id.* ¶¶ 9–16.

## ii. Defendants' Allegedly False and Misleading Statements

Plaintiff claims that over the past five years, Defendants have made a number of material misstatements to the investing public in order to "hide" China Gerui's "horrible financial performance" and the "serious problems being experienced with its business operations, use of capital, financial condition and fiscal strategy." TAC ¶ 3.[2] Plaintiff's allegations of fraud center on five events: (1) the Company's purchase of land use rights to 25.94 acres of land located in China from an entity called Zhengzhou No. 2 Iron and Steel Company Limited ("Zhengzhou") for $42.6 million (the "Land Transaction"), *id.* ¶¶ 18, 51–53;[3] (2) the Company's relationship with Cambelle-Inland, LLC ("Cambelle"), a U.S.-China investment firm, *id.* ¶¶ 25, 54–55; (3) the Company's purchase of a collection of antique Chinese porcelain for $234 million (the "Porcelain Acquisition"), *id.* ¶¶ 61–70; (4) the Company's retention of UHY Vocation HK CPA

---

[2] In his opposition brief, Plaintiff alleges, for the first time, that Defendants actually used "the pretenses of a failing business operation" to "conceal their corporate liquidation efforts." Pl.'s Opp'n Mem. at 3; *see also id.* at 4 (claiming that China Gerui's directors and senior management "engaged in an outrageous fraudulent scheme during the Class Period to steal virtually all of the cash, assets, and other resources owned by the Company and its shareholders, and to ultimately put the Company out of business"). As "it is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss," the Court will not consider any of Plaintiff's new allegations in ruling on Defendants' motion. *O'Brien v. Nat'l Prop. Analysts Partners*, 719 F. Supp. 222, 229 (S.D.N.Y. 1989); *see also Lerner v. Forster*, 240 F. Supp. 2d 233, 241 (E.D.N.Y. 2003) ("New claims not specifically asserted in the complaint may not be considered by courts when deciding a motion to dismiss.").

[3] Plaintiff alleges that the Land Transaction involved the purchase of land use rights to 25.94 acres of land, although the Company's own annual reports consistently refer to 24.94 acres. TAC ¶¶ 51–53. The Court assumes for present purposes that 25.94 acres of land are at issue.

Limited ("UHY") as its auditor, *id.* ¶¶ 21, 100; and (5) the Company's regulatory filings with the SEC in the United States and the State Administration for Industry and Commerce ("SAIC") in China, *id.* ¶¶ 86–89.  Each of these events is more fully described below.

    ***The Land Transaction.***  On July 11, 2011, China Gerui announced, in its 2010 annual report, that it had started the process of acquiring title to 25.94 acres of land use rights from Zhengzhou.  *Id.* ¶ 51.  The Company's existing production facilities and warehouses were already located on a portion of that land, as the Company had been subleasing 6.69 acres.  *Id*. The Company stated that it had prepaid, as of December 31, 2010, approximately $2.1 million to Zhengzhou, but that the final price was to be further determined "based on market-based valuation of the land value and calculation of associated value-added tax."  *Id*.  The stated purpose of the transaction was "operation risk mitigation."  *Id*.

    On May 7, 2012, in its 2011 annual report, the Company again stated that it was in the process of transferring title to the 25.94 acres of land use rights.  *Id.* ¶ 52.  The Company also announced that it had increased its prepayment to approximately $12.7 million.  *Id.*  On April 30, 2013, in its 2012 annual report, the Company announced that on February 26, 2013, it had entered into an agreement with Zhengzhou, whereby the Company would acquire the land use rights to the 25.94 acres in exchange for $42.6 million.  *Id.* ¶ 53.[4]

    Plaintiff alleges that the Land Transaction was a "complete fraud, and could not have possibly taken place under the normal governmental oversight exercised in the United States." *Id.* ¶ 90.  Although the TAC does not clarify in what way the transaction was a fraud, Plaintiff does set forth a few relevant facts.  First, according to a Chinese law firm/title company that

---

[4] In the Second Amended Complaint ("SAC"), Plaintiff alleged that although the Company claimed the purchase price for the land use rights was determined based on an appraisal report prepared by an independent appraisal firm, that firm did not actually exist.  SAC ¶ 51.  The TAC contains no such allegation.

Plaintiff retained, title to the land use rights was never actually transferred from Zhengzhou to the Company. *Id.* ¶ 91, Ex. D.  Second, Zhengzhou's filings with the SAIC show that neither Zhengzhou's assets nor its profits were ever valued near $43.6 million from 2012 through 2015—the time period during which Zhengzhou purportedly owned and then sold the land use rights to the Company. *Id.* ¶¶ 92–93, Ex. E.[5]  Third, at the time of the "transfer," Defendant Lu, China Gerui's Chairman and CEO, owned 40% of Zhengzhou. *Id.* ¶ 51.

***Relationship with Cambelle.***  On May 1, 2013, China Gerui entered into an agreement with Cambelle for business-related advice and consulting services. *Id.* ¶ 54.  On May 13, 2013, Defendant Lu commented on the engagement, stating that the Company planned to "globalize [its] business through accretive acquisitions while continuing to focus on organic growth opportunities," and that this strategy would enable the Company, "[d]uring the next few years, . . . [to] create a blend of revenue across a broader customer base, both domestically . . . and internationally." *Id.* ¶ 55.  Plaintiff claims that this statement was "false when made or became false sometime after it was made," because as of at least November 14, 2014, Cambelle was no longer performing work for the Company. *Id.* ¶ 95.

***The Porcelain Acquisition.***  On September 4, 2014, the Company announced, during an earnings conference call, that it had purchased for $234 million a collection of antique Chinese porcelain appraised at $905 million. *Id.* ¶¶ 61–62.  Defendant Lu explained that Company management and the Board of Directors decided to take advantage of the Company's rich cash position to make the alternative investment. *Id.* ¶ 62.  Lu explained that the Company's intention was to sell all 206 pieces in the collection over time at a substantial return, and to use the profits

---

[5] According to Plaintiff, Zhengzhou reported total assets of $18.6 million in 2012; $17.9 million in 2013; $18 million in 2014; and $18 million in 2015, and it reported total profits of $6.5 million in 2012; $3.1 million in 2013; $8 million in 2014; and $0 in 2015. TAC ¶ 93, Ex. E.

from the sale to support the Company's steel operations while the steel industry "gains stronger fundamental balance." *Id.* ¶¶ 62–63.

Defendant Meng, the Company's CFO, provided more detail regarding the porcelain collection.  He noted that the porcelain came from a private entrepreneur who was under financial pressure from his personal business, that the collection was appraised and authenticated by "Class A certified China arts appraisers," and that the prices of the individual pieces in the collection compared favorably with those of similar pieces.  *Id.* ¶ 67.  Both Lu and Meng acknowledged that the Porcelain Acquisition, paid for from the Company's existing cash accounts, would put short-term pressure on the Company's cash position.  *Id.* ¶¶ 64–65.  Both executives expressed optimism, however, regarding the potential rewards from the investment. *Id.*

On the date the Porcelain Acquisition was announced, September 4, 2014, China Gerui's stock price declined approximately 20%, from $0.61 per share (pre-split)[6] on September 3, 2014, to $0.49 per share (pre-split).  *Id.* ¶ 71.  Approximately three weeks later, on September 26, 2014, Lu sent a letter to shareholders discussing the Company's ongoing growth strategy, but the letter made no mention of the recent porcelain purchase.  *Id.* ¶ 72.  On January 6, 2015, the Company issued a press release, in which it stated that the Company was "vigorously pursuing opportunities with established domestic and international auction houses to liquidate the antique collection in part or in its entirety."  *Id.* ¶ 74.

Plaintiff claims that Defendants have failed to disclose a number of facts regarding the Porcelain Acquisition, namely:  when or from whom the porcelain was purchased; where the

---

[6] China Gerui's Board of Directors approved a one-for-ten reverse stock split, effective November 7, 2014, meant to raise the Company's share price above the NASDAQ's $1.00 per share listing requirement to avoid being delisted. TAC ¶ 73.  The Company's shares were later delisted on November 24, 2015.  *Id.* ¶ 80.

collection was being stored; whether the collection was insured; who appraised and authenticated the collection; what material actions were being taken to "vigorously pursu[e] opportunities" to liquidate the collection; and which "established domestic and international auction houses" were being used to liquidate the collection.  *Id.* ¶¶ 69, 74.

Plaintiff also claims that the Porcelain Acquisition was "a complete fraud."  *Id.* ¶ 96.  As with the Land Transaction, the TAC does not clarify in what way the acquisition was a fraud.  However, Plaintiff sets forth a few salient facts.  First, Plaintiff alleges that no certificates of authenticity for the porcelain collection were ever offered or disclosed by Lu.  *Id.* ¶ 38.  Second, Plaintiff alleges that Lu has a "background in art fraud."  *Id.*  Namely, in 2002, Lu was allegedly involved in a widely publicized scheme to sell fake paintings of a famous Chinese painter.  *Id.* ¶ 37.  Third, Plaintiff alleges that art experts he consulted have "clearly indicated" that a large percentage of the artwork offered for sale in China are forgeries.  *Id.* ¶ 38.  Fourth, Plaintiff alleges that the Company attempted to obtain insurance for the porcelain collection but was denied coverage.  *Id.* ¶ 99.  Finally, Plaintiff alleges that the Company's filings for the SAIC "do not leave room" for spending $234 million on the porcelain collection, "let alone acquiring an asset worth" $905 million.  *Id.* ¶ 98, Ex. G.[7]

***Retention of UHY.***  On April 30, 2015, the Company filed Form NT 20-F with the SEC, stating that its 2014 annual report would be filed late.  *Id.* ¶ 75.  The Company further stated that it anticipated that it would file the report "within the fifteen-day grace period provided by Exchange Act Rule 12b-25."  *Id.* ¶ 76.  Ultimately, the Company never filed its 2014 annual report.  *Id.* ¶ 77.

---

[7] According to Plaintiff, the Company reported total assets of $456 million in 2013; $403 million in 2014; and $393 million in 2015, and it reported a total business income of $372 million in 2013; $173 million in 2014; and $116 million in 2015.  TAC ¶ 98, Ex. G.

Plaintiff alleges that the Company's April 30, 2015 statement was "false when made," because "it no longer had an auditor," which it would need to properly file its report with the SEC. *Id.* ¶ 100. Plaintiff does not indicate on what date the Company allegedly lost its auditor. However, the TAC alleges elsewhere that UHY was the Company's public auditor "from the date of the Company's inception until sometime shortly before January 13, 2016." *Id.* ¶ 21.[8]

***Regulatory Filings.*** Plaintiff alleges that China Gerui has not filed any financial statements with the SEC since January 6, 2015. *Id.* ¶ 86. However, the Company has continued to file periodic financial statements with its regulator in China, the SAIC. *Id.* Accordingly, Plaintiff alleges that "all of the Prospectuses and Registration statements issued by the Company throughout the Class Period are missing the material disclosure that the Company has prioritized its regulatory filings between the U.S. and China, with the Chinese authorities clearly commanding the Company's attention." *Id.* ¶ 89.[9] The TAC references four such documents that are allegedly missing this disclosure: a registration statement filed on September 15, 2009; a prospectus and prospectus supplement for the Company's November 9, 2009 offering; a prospectus dated August 4, 2010; and a registration statement filed July 25, 2013. *Id.* ¶¶ 47–50.

### b. Procedural Background

This Court has already twice found Plaintiff's allegations to be insufficiently plead. On November 26, 2014, Plaintiff filed his first Complaint against China Gerui and the Individual

---

[8] In his opposition brief, Plaintiff contradicts himself by asserting that the Company lost its auditor in "early 2015," and that "the final auditing efforts of UHY occurred as of April 30, 2014." Pl.'s Opp'n Mem. at 13, 16, 17. The Court will not consider either of these new allegations. *O'Brien*, 719 F. Supp. at 229.

[9] In his opposition brief, Plaintiff alleges, for the first time, that the July 25, 2013 registration statement is also missing a disclosure that the Company "failed to properly utilize the services of Cambelle-Inland to grow and expand the Company's business operations, product mix, and its expansion into new domestic and international markets." Pl.'s Opp'n Mem. at 9–10. The Court will not consider Plaintiff's new allegation. *O'Brien*, 719 F. Supp. at 229.

Defendants, which he later amended on December 5, 2014.  Docs. 1, 3.  Plaintiff's Amended

Complaint focused on events leading up to the Porcelain Acquisition, claiming that Defendants

made false and misleading statements regarding China Gerui's growth strategy, fiscal strategy,

and unrestricted cash holdings by failing to disclose the Company's intention to use a significant

portion of its cash holdings to acquire the porcelain.  Doc. 3.  On December 23, 2015, the Court

dismissed the Amended Complaint, finding that Plaintiff failed to plausibly allege that any of

Defendants' statements regarding the Company's growth strategies, fiscal responsibilities, or

cash reserves were false when made or that the Porcelain Acquisition rendered any of those prior

statements misleading.  *Pehlivanian v. China Gerui Advanced Materials Grp., Ltd.*, 153 F. Supp.

3d 628 (S.D.N.Y. 2015) ("*China Gerui I*").  The Court acknowledged, however, that it was

possible for Plaintiff to plead additional facts to remedy the deficiencies identified by the Court;

the Court thus granted Plaintiff leave to amend his Complaint a second time.  *Id.* at 656–57.

    With the Court's leave, Plaintiff filed his Second Amended Complaint ("SAC") on

January 22, 2016.  Doc. 45.  As with the Amended Complaint, the SAC alleged that Defendants

failed to disclose a number of facts regarding the Porcelain Acquisition.  Plaintiff also added

allegations that Defendants failed to disclose information regarding the Land Transaction, as

well as other facts pertaining to the business of the Company.  On May 16, 2016, the Court

dismissed the SAC, finding that Plaintiff again failed to adequately plead the existence of any

material misstatements of fact.  *Pehlivanian v. China Gerui Advanced Materials Grp., Ltd.*, No.

14 Civ. 9443 (ER), 2016 WL 2859622 (S.D.N.Y. May 16, 2016) ("*China Gerui II*").  Because

Plaintiff asserted that he had uncovered more information since filing the SAC, the Court granted

him leave to amend his Complaint a third time to attempt to cure the defects identified by the

Court. *Id.* at *14.  However, the Court warned Plaintiff that he was firmly "on notice of the deficiencies in his pleading" and that he would not be given "unlimited bites at the apple."  *Id.*

On June 16, 2016, Plaintiff filed his TAC.  Like the SAC, the TAC alleges that Defendants failed to disclose a number of facts regarding the Porcelain Acquisition and Land Transaction.  Now, however, Plaintiff also explicitly alleges that both of these transactions were "complete fraud[s]."  TAC ¶¶ 90, 96.  Plaintiff also alleges that Defendants failed to disclose information regarding the status of the Company's auditor, its relationship with Cambelle, and information regarding its regulatory filings in China.  On August 3, 2016, Defendants China Gerui and Edelson moved to dismiss the TAC.  Doc. 70.

## II.    Legal Standard

### a.    Rule 12(b)(6) Motions to Dismiss:  General Legal Standard

When ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014).  The Court is not required to credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also id.* at 681 (citing *Twombly*, 550 U.S. at 551).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  If the plaintiff has not "nudged [her]

claims across the line from conceivable to plausible, [the] complaint must be dismissed."

*Twombly*, 550 U.S. at 570; *see Iqbal*, 556 U.S. at 680.

The question in a Rule 12 motion to dismiss "is not whether a plaintiff will ultimately

prevail but whether the claimant is entitled to offer evidence to support the claims." *Sikhs for*

*Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012) (quoting *Villager Pond, Inc. v. Town*

*of Darien*, 56 F.3d 375, 378 (2d Cir. 1995)). "[T]he purpose of Federal Rule of Civil Procedure

12(b)(6) 'is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of

a claim for relief without resolving a contest regarding its substantive merits,'" and without

regard for the weight of the evidence that might be offered in support of Plaintiff's claims.

*Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (quoting *Glob. Network Commc'ns, Inc. v.*

*City of New York*, 458 F.3d 150, 155 (2d Cir. 2006)).

### b.  Heightened Pleading Standard under Rule 9(b) and the PSLRA

Beyond the requirements of Rule 12(b)(6), a complaint alleging securities fraud must

satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) and the

Private Securities Litigation Reform Act of 1995 ("PSLRA") by stating the circumstances

constituting fraud with particularity. *See, e.g.*, *ECA & Local 134 IBEW Joint Pension Tr. of*

*Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 196 (2d Cir. 2009) (citing *Tellabs, Inc. v.*

*Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319–20 (2007)). Specifically, Rule 9(b) requires that

a securities fraud claim based on misstatements must identify:  (1) the allegedly fraudulent

statements, (2) the speaker, (3) where and when the statements were made, and (4) why the

statements were fraudulent. *See, e.g.*, *Anschutz Corp. v. Merrill Lynch & Co., Inc.*, 690 F.3d 98,

108 (2d Cir. 2012) (citing *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004)). Put another

way, Rule 9(b) "requires that a plaintiff set forth the who, what, when, where and how of the

alleged fraud." *U.S. ex rel. Kester v. Novartis Pharm. Corp.*, 23 F. Supp. 3d 242, 252 (S.D.N.Y. 2014) (citing *U.S. ex rel. Polansky v. Pfizer, Inc.*, No. 04 Civ. 704 (ERK), 2009 WL 1456582, at *4 (E.D.N.Y. May 22, 2009)).

Like Rule 9(b), the PSLRA requires that securities fraud complaints "'specify' each misleading statement," set forth the reasons or factual basis for the plaintiff's belief that the statement is misleading, and "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 345 (2005) (quoting 15 U.S.C. §§ 78u-4(b)(1), (2)); *see also, e.g.*, *Slayton v. Am. Express, Co.*, 604 F.3d 758, 766 (2d Cir. 2010).

### c.  Extrinsic Documents

"When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiffs relied on in bringing suit and that are either in the plaintiffs' possession or that the plaintiffs knew of when bringing suit, or matters of which judicial notice may be taken." *Silsby v. Icahn*, 17 F. Supp. 3d 348, 354 (S.D.N.Y. 2014) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)), *aff'd sub nom. Lucas v. Icahn*, No. 14 Civ. 1906, 2015 WL 3893617 (2d Cir. June 25, 2015) (summary order); *see also DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). To be incorporated into the complaint by reference, "the [c]omplaint must make a clear, definite and substantial reference to the documents." *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F. Supp. 2d 679, 691 (S.D.N.Y. 2011). The Court may also "take judicial notice of public disclosure documents that must be filed with the [SEC] and documents that both 'bear on the adequacy' of SEC disclosures and are 'public disclosure documents required by law.'" *Silsby*, 17 F. Supp. 3d at 354 (quoting *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773–

74 (2d Cir. 1991)); *see also In re Bank of Am. AIG Disclosure Sec. Litig.*, 980 F. Supp. 2d 564,

570 (S.D.N.Y. 2013), *aff'd*, 566 F. App'x 93 (2d Cir. 2014) (summary order).

China Gerui and Edelson attach the Company's 2013 annual report to their motion to

dismiss the TAC.  *See* Furbush Decl. (Doc. 72), Ex. 1.  The Court may "take judicial notice of

public disclosure documents that must be filed with the [SEC] and documents that both 'bear on

the adequacy' of SEC disclosures and are 'public disclosure documents required by law.'"

*Silsby*, 17 F. Supp. 3d at 354 (quoting *Kramer*, 937 F.2d at 773–74).  Plaintiff also does not

object to the Court's consideration of the 2013 annual report.  Accordingly, the Court may take

judicial notice of this document and will consider it in deciding the present motion to dismiss.

**III.    Discussion**

Defendants contend that this action must be dismissed in its entirety because, once again,

Plaintiff fails to sufficiently allege that any Defendant made a material misrepresentation or

omitted to state a fact necessary to render a prior statement not misleading.  Defs.' Mem. (Doc.

71) at 8–12.  According to Defendants, Plaintiff has instead, for the third time, attempted to

improperly disguise corporate mismanagement allegations as securities fraud allegations.  *Id.* at

3.  Defendants alternatively argue that Plaintiff's Exchange Act claims must be dismissed, as

Plaintiff fails to adequately plead a strong inference of scienter, reliance, or loss causation, *id.* at

12–14, and that Plaintiff's Securities Act claims must be dismissed, as Plaintiff fails to

adequately plead standing as to the one aspect of his claim that is not already time barred, *id.* at

19–23.  In response, Plaintiff does not address Defendants' alternative arguments.  Instead,

Plaintiff sets forth a number of new factual allegations and theories in an effort to substantiate his

position that Defendants made a series of material misrepresentations.  Pl.'s Opp'n Mem. (Doc.

77).

### a.  Claims Under Section 10(b) of the Exchange Act and SEC Rule 10b-5

Section 10(b) of the Exchange Act prohibits using or employing, "in connection with the

purchase or sale of any security . . . any manipulative or deceptive device or contrivance," 15

U.S.C. § 78j(b), while SEC Rule 10b-5, promulgated thereunder, creates liability for a person

who makes "any untrue statement of a material fact or . . . omit[s] to state a material fact . . . in

connection with the purchase or sale of any security," *In re OSG Sec. Litig.*, 971 F. Supp. 2d 387,

397 (S.D.N.Y. 2013) (quoting 17 C.F.R. § 240.10b-5 (1951)).  To state a private civil claim

under Section 10(b) and Rule 10b-5, a plaintiff must plead that:  (1) the defendant made a

material misrepresentation or omission, (2) with scienter, *i.e.*, a wrongful state of mind, (3) in

connection with the purchase or sale of a security, and (4) that the plaintiff relied on the

misrepresentation or omission, thereby (5) causing economic loss.  *Dura*, 544 U.S. at 341–42;

*see also, e.g.*, *Lattanzio v. Deloitte & Touche LLP*, 476 F.3d 147, 153 (2d Cir. 2007); *Kalnit v.*

*Eichler*, 264 F.3d 131, 138 (2d Cir. 2001).

As to the first element, in order to survive a motion to dismiss, Plaintiff must establish

that Defendants "made a statement that was '*misleading* as to a *material* fact."[10]  *Matrixx*

*Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 38 (2011) (quoting *Basic Inc. v. Levinson*, 485 U.S.

224, 238 (1988)); *see In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 571 (S.D.N.Y. 2014)

("With respect to misstatements, there are two components to this requirement:  the statement

must be false, and the statement must be material."), *aff'd*, 604 F. App'x 62 (2d Cir. 2015).  "A

---

[10] In determining materiality, the question is whether "there is 'a substantial likelihood that the disclosure of the [omitted fact] would have been viewed by the *reasonable* investor as having *significantly* altered the total mix of information [ ] available.'"  *Monroe Cty. Emps.' Ret. Sys. v. YPF Sociedad Anonima*, 15 F. Supp. 3d 336, 349 (S.D.N.Y. 2014) (emphasis and alterations in original) (quoting *In re ProShares Tr. Sec. Litig.*, 728 F.3d 96, 102 (2d Cir. 2013)).  China Gerui and Edelson argue that certain of the statements and omissions underlying Plaintiff's claims are immaterial.  Defs.' Mem. at 12.  Since the Court finds that Plaintiff has not adequately plead a misrepresentation or omission, however, the Court need not address the issue of materiality.

violation of Section 10(b) and Rule 10b-5 premised on misstatements cannot occur unless an alleged material misstatement was false *at the time it was made*." *In re Lululemon Sec. Litig.*, 14 F. Supp. 3d at 571. Furthermore, the Second Circuit has repeatedly indicated that plaintiffs cannot simply assert that a statement is false—"they must demonstrate with specificity why and how that is so." *Rombach*, 355 F.3d at 174.

With respect to material omissions, a defendant's silence is not misleading absent a duty to disclose. *Basic*, 485 U.S. at 239 n.17. "Disclosure of an item of information is not required . . . simply because it may be relevant or of interest to a reasonable investor." *Resnik v. Swartz*, 303 F.3d 147, 154 (2d Cir. 2002). Rather, "[a] duty to disclose arises whenever secret information renders prior public statements materially misleading." *In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 268 (2d Cir. 1993). The parties are not under a duty to disclose information that is equally available, widely reported, or "so basic that any investor could be expected to know it." *Monroe Cty. Emps.' Ret. Sys. v. YPF Sociedad Anonima*, 15 F. Supp. 3d 336, 349 (S.D.N.Y. 2014).

The Court finds that Plaintiff again fails to adequately plead the existence of even the first element of a Section 10(b) claim. With respect to the Land Transaction, the TAC does not identify specifically which of Defendants' statements are false or misleading. Instead, Plaintiff asserts only generally that the entire transaction was a "complete fraud." TAC ¶ 90. In order to survive a motion to dismiss, however, Plaintiff has the burden of "specify[ing] the statements [he] contends were fraudulent" and explaining "why the statements were fraudulent." *Rombach*, 355 F.3d at 170; *U.S. ex rel. Kester*, 23 F. Supp. 3d at 252 ("Rule 9(b) requires that a plaintiff set forth the who, what, when, where and how of the alleged fraud."); *see also Boca Raton Firefighters & Police Pension Fund v. Bahash*, 506 F. App'x 32, 38 (2d Cir. 2012) (summary

order) (finding a complaint alleging securities fraud to fall "far short" of the pleading standard

where it "[left] the District Court to search the long quotations in the complaint for particular

false statements, and then determine on its own initiative how and why the statements were

false").  To the extent Plaintiff is alleging that Defendants failed to disclose that the land use

rights were never transferred from Zhengzhou to the Company, the Court has already concluded

that (1) this fact did not render misleading the Company's prior statements, and (2) the 2012 and

2013 annual reports did make clear that the transfer was still in progress.  *China Gerui II*, 2016

WL 2859622, at *10.

Plaintiff's allegations regarding the Porcelain Acquisition suffer from the same defect as

the Land Transaction, as Plaintiff only generally alleges that the transaction was a "complete

fraud," TAC ¶ 96, without ever explaining which particular statements were false or misleading

and in what way the transaction was a fraud.  The Court has also already ruled that Defendants

had no duty to disclose details regarding the disposition of the porcelain, such as the actions

being taken to liquidate the collection.  *China Gerui II*, 2016 WL 2859622, at *11.

Plaintiff also fails to plead the existence of any false or misleading statement regarding

Defendants' relationship with Cambelle.  Plaintiff alleges that the Company's May 2013

announcement of its engagement with Cambelle was either "false when made or became false

sometime after it was made" because Cambelle stopped performing work for the Company by

November 2014.  TAC ¶ 95.  However, Plaintiff concedes that the Company engaged Cambelle

in May 2013.  *Id.* ¶ 54.  The fact that Cambelle stopped working for the Company sometime after

it was retained does not render Defendants' 2013 statement false or misleading.  *See In re*

*Lululemon Sec. Litig.*, 14 F. Supp. 3d at 571 ("A violation of Section 10(b) and Rule 10b-5

premised on misstatements cannot occur unless an alleged material misstatement was false *at the*

*time it was made*.").  In any event, the Company's 2013 annual report disclosed that the

agreement with Cambelle expired on April 30, 2014, thus curing any potential confusion about

whether the engagement would be indefinite.  Furbush Decl., Ex. 1 at 41.

Similarly, Plaintiff fails to plead any false or misleading statements regarding

Defendants' public auditor.  Plaintiff concedes that UHY was China Gerui's public auditor "from

the date of the Company's inception until sometime shortly before January 13, 2016," TAC ¶ 21,

thus disproving his own assertion that the Company misled investors into believing it had an

auditor in April 2015, *id.* ¶ 100.  Moreover, the Court has already held that the fact the Company

no longer has an auditor does not serve as an adequate basis of a Section 10(b) claim unless

Plaintiff points to some statement rendered false or misleading as a result of the omission, *China

Gerui II*, 2016 WL 2859622, at *10 n.10, which Plaintiff again fails to do.

In sum, because the TAC fails to adequately allege that Defendants made *any* material

misrepresentations or omissions, Plaintiff cannot sustain a claim for securities fraud.[11]

### b.  Claims Under Section 20(a) of the Exchange Act

Plaintiff also brings claims against the Individual Defendants under Section 20(a) of the

Exchange Act, which imposes liability on individuals who control any person or entity that

violates Section 10.  *See* TAC ¶¶ 144–147; *see also* 15 U.S.C. § 78t(a).  "To assert a *prima facie*

case under Section 20(a), a plaintiff 'must show a primary violation by the controlled person and

control of the primary violator by the targeted defendant, and show that the controlling person

was in some meaningful sense a culpable participant in the fraud perpetrated by the controlled

person.'"  *Bd. of Trs. of City of Ft. Lauderdale Gen. Emps.' Ret. Sys. v. Mechel OAO*, 811 F.

Supp. 2d 853, 882 (S.D.N.Y. 2011) (quoting *S.E.C. v. First Jersey Sec., Inc*., 101 F.3d 1450,

---

[11] The Court need not address Defendants' alternative arguments in favor of dismissing Plaintiff's Section 10(b) claim.  *See* Defs.' Mem. at 12–13 (scienter), 13–14 (reliance/transaction causation), 14–16 (loss causation).

1472 (2d Cir. 1996)), *aff'd sub nom. Frederick v. Mechel OAO*, 475 F. App'x 353 (2d Cir. 2012) (summary order).  The control person liability claims under Section 20(a) must be dismissed because Plaintiff fails to allege a primary violation under Section 10(b).  *See Rombach*, 355 F.3d at 178 ("Because we have already determined that the district court properly dismissed the primary securities claims against the individual defendants, these secondary claims must also be dismissed."); *see also Mechel*, 811 F. Supp. 2d at 859 n.4, 882 (dismissing Section 20(a) claims against individual defendants who had neither been served with the complaint nor joined the company's motion to dismiss because the complaint failed to state a primary violation under Section 10(b) and Rule 10b-5).

### c.   Claims Under Sections 11 and 12(a)(2) of the Securities Act

Section 11 of the Securities Act imposes civil liability on issuers and signatories of a registration statement that "contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading."  15 U.S.C. § 77k(a).  Similarly, Section 12(a)(2) of the Securities Act provides that a person who sells securities by means of a prospectus that misrepresents or omits material facts is liable to the person purchasing such security from him.  *Id.* § 77*l*(a)(2).  In this Circuit, the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) apply to Section 11 and 12(a)(2) claims that sound in fraud.  *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004).  However, neither Section 11 nor Section 12(a)(2) requires that a plaintiff allege the scienter or reliance elements of a fraud cause of action.  *Id.* at 169 n.4 (citing *Herman & MacLean v. Huddleston*, 459 U.S. 375, 382 (1983)).

Plaintiff's claims under Sections 11 and 12(a)(2) are premised on the assertion that China Gerui's registration statements and prospectuses from 2009 to 2013 were false and misleading

because they failed to disclose that the Company "prioritized its regulatory filings between the U.S. and China." TAC ¶ 89.  Even assuming this were a true and material fact, Plaintiff's only basis for the alleged prioritization is that after January 6, 2015, the Company stopped filing financial statements with the SEC.  *Id.* ¶ 86.  Because the Company's registration statements and prospectuses from 2009 to 2013 could not be false or misleading as to conduct that did not even begin to take place until 2015, Plaintiff's claims under Sections 11 and 12(a)(2) must be dismissed.  *See, e.g.*, *Charter Twp. of Clinton Police & Fire Ret. Sys. v. KKR Fin. Holdings LLC*, No. 08 Civ. 7062 (PAC), 2010 WL 4642554, at *11 (S.D.N.Y. Nov. 17, 2010) ("The truth of a statement made in the registration statement 'is adjudged by the facts as they existed when the registration statement became effective.'") (quoting *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 308 F. Supp. 2d 249, 254 (S.D.N.Y. 2004)).[12]

### d.   Claims Under Section 15 of the Securities Act

Plaintiff also brings claims against the Individual Defendants under Section 15 of the Securities Act, which imposes liability on individuals who control any person or entity that violates Section 11.  *See* TAC ¶¶ 129–132; *see also* 15 U.S.C. § 77o.  The control person liability claims under Section 15 must be dismissed because Plaintiff fails to allege a primary violation under Section 11.  *See Rombach*, 355 F.3d at 178 ("Because we have already determined that the district court properly dismissed the primary securities claims against the individual defendants, these secondary claims must also be dismissed.").

### e.   The Non-Moving Individual Defendants

This Court has the power to dismiss a complaint against the non-moving Individual Defendants, so long as it is exercised cautiously and on notice.  *See Wachtler v. Cty. of*

---

[12] The Court need not address Defendants' alternative arguments in favor of dismissing Plaintiff's Section 11 and 12(a)(2) claims.  *See* Defs.' Mem. at 19 (timeliness), 22 (materiality), 22–23 (standing).

*Herkimer*, 35 F.3d 77, 82 (2d Cir. 1994) (affirming the district court's dismissal of a claim against a defendant who neither filed an appearance nor moved for dismissal since plaintiff was on notice from motion of other defendants and had an opportunity to be heard); *see also Alki Partners, L.P. v. Vatas Holding GmbH*, 769 F. Supp. 2d 478, 499 (S.D.N.Y. 2011) (dismissing claims under Sections 10(b) and 20(a) against an individual defendant who did not appear in the case or join in the other defendants' motions because the plaintiffs' claims against him failed for the same reasons they failed against the other defendants), *aff'd sub nom. Alki Partners, L.P. v. Windhorst*, 472 F. App'x 7 (2d Cir. 2012) (summary order).  Although only China Gerui and Edelson have been served, *see* Doc. 68, their motion put Plaintiff on notice of the grounds for dismissal and Plaintiff was afforded an opportunity to respond.   Plaintiff has not adequately pleaded the existence of any materially misleading statements.  This deficiency is fatal to Plaintiff's claims against the moving and non-moving Individual Defendants alike.  Therefore, Plaintiff's claims against the non-moving Individual Defendants are dismissed.

## IV.    Leave to Amend

China Gerui and Edelson request that this Court dismiss Plaintiff's action with prejudice. Defs.' Mem. at 4, 24; Defs.' Reply Mem. (Doc. 79) at 9.  Plaintiff conversely requests that the Court permit him leave to amend his Complaint a fourth time.  Pl.'s Opp'n Mem. at 24–25.

Rule 15 of the Federal Rules of Civil Procedure instructs courts to "freely give leave" to replead "when justice so requires."  Fed. R. Civ. P. 15(a)(2); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962).  The "usual practice" in this Circuit upon granting a motion to dismiss is to permit amendment of the complaint.  *Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*, 33 F. Supp. 3d 401, 446–47 (S.D.N.Y. 2014) (citing *Ronzani v. Sanofi S.A.*, 899 F.2d 195, 198 (2d Cir. 1990)).  "Where the possibility exists that the defect can be cured,

leave to amend at least once should normally be granted unless doing so would prejudice the defendant." *Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, 26 F. Supp. 2d 593, 605 (S.D.N.Y. 1998) (citing *Oliver Schools, Inc. v. Foley*, 930 F.2d 248, 253 (2d Cir. 1991)); *see also ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007) (noting that "courts typically grant plaintiffs at least one opportunity to plead fraud with greater specificity when they dismiss under Rule 9(b)" but denying leave to amend where the plaintiff was already given that opportunity); *Luce v. Edelstein*, 802 F.2d 49, 56 (2d Cir. 1986) ("Complaints dismissed under Rule 9(b) are almost always dismissed with leave to amend.").

Plaintiff has already had two opportunities to cure the defects identified by the Court, and his most recent pleading suffers from the same types of defects as its predecessors.  In its second decision granting Defendants' motion to dismiss, the Court put Plaintiff on notice that he would not be given unlimited chances to replead.  *China Gerui II*, 2016 WL 2859622, at *14.  "[W]here a plaintiff is on notice of deficiencies in an initial pleading and has had the opportunity to cure them by a first amendment, 'dismissal with prejudice is proper when a complaint previously has been amended."  *Dietrich v. Bauer*, 76 F. Supp. 2d 312, 351 (S.D.N.Y. 1999).  The Court has no reason to believe that going through this exercise a fourth time will result in a different outcome, especially considering that Plaintiff claims to have already uncovered "everything that one could discover (without subpoena power) generated by an individual or entity concerning the Company."  Compl. at 2; *see also* Pl.'s Opp'n Mem. at 1.  Accordingly, the Court finds that dismissal with prejudice is warranted here.

### V.   Conclusion

For the reasons set forth above, China Gerui and Edelson's motion is GRANTED and the TAC is dismissed with prejudice.  Plaintiff's request for leave to file a motion for alternative

service of process is DENIED as moot, as is Plaintiff's letter motion to compel the production of

certain information.  The Clerk of the Court is respectfully directed to terminate the motions,

Docs. 70 & 82, and close the case.[13]

It is SO ORDERED.

Dated:    March 29, 2017
          New York, New York

Edgardo Ramos, U.S.D.J.

---

[13] The PSLRA requires the Court to "include in the record specific findings regarding compliance by each party and each attorney representing any party with each requirement of Rule 11(b) of the Federal Rules of Civil Procedure as to any complaint, responsive pleading, or dispositive motion." 15 U.S.C. § 78u-4(c)(1).  Neither the claims nor defenses were harassing or frivolous.  All factual contentions had evidentiary support or were reasonably based on belief or a lack of information.  Furthermore, Defendants did not affirmatively allege any improper conduct or move for sanctions.  In accordance with the PSLRA, the Court finds that the parties and counsel in this matter have complied with Rule 11(b).